## Elias H. Derby *versus* Amasia Jones.

When buildings are conveyed, and are described as standing on a lot of land, it usually becomes apparent, that it was not the intention to convey the land. In such case the superstructure only passes.

When it is apparent, that the language, stating that they are standing upon a certain lot, is used only to describe the place where they are situated, in like manner and with like effect as if the deed had stated them to be standing on a particular square or street, no inference can be justly drawn, that it was not the intention, that the land on which they stand, but not the lot named, should pass by the conveyance.

By a devise or grant of a messuage or house, the land on which it stands will pass with it, unless there be something to indicate that such was not the intention.

But where the facts and circumstances in the case, clearly indicate, that the intention of the parties was that the land should not pass, the house only is conveyed.

If the buildings only, and not the land on which they stand, are conveyed by the deed, the covenant therein, that the grantor will not claim " any right or title to the aforesaid premises," applies only to the buildings, and can have no influence upon any title to the land subsequently acquired by the grantor.

If the demandant, in a writ of entry, fails to show any title to the real estate demanded in himself, he cannot recover, although it should appear, that the tenant also had no title.

Writ of entry, demanding two thirds of a lot of land, on which were standing a house and a stable, in Oldtown.

The material facts appear in the opinion of the Court.

The deed from Jones, the tenant, to Dwinel & al. under which the demandant derives his claim of title, was in these words : —

" Know all men by these presents, that I, Amasia Jones of Orono, in the county of Penobscot, in consideration of two hundred dollars to me paid by Luther Dwinel, Calvin Dwinel and Rufus Dwinel of Bangor, the receipt whereof I do hereby acknowledge, have remised, released, sold and forever quit claimed, and do for me and my heirs by these presents remise, release, sell and forever quit claim unto the said Dwinels, their heirs and assigns, the house and stable on the mill lot, at Great Works, built and now occupied by me.       •

" To have and to hold the aforementioned premises with all the privileges and appurtenances thereunto belonging, to them, the said Dwinels, heirs and assigns forever; so that neither I, the said Jones, nor my heirs or any other person or persons claiming from or under me or them, or in the name right or stead of me or them, shall or will by any way or means, have, claim or demand any right or title to the aforesaid premises or their appurtenances or any part or parcel thereof forever.

" In witness whereof I, the said Amasia Jones, have hereunto set my hand and seal this 29th day of March, in the year of our Lord one thousand eight hundred and thirty-three.

"Amasia Jones. [L. s.]"

" Signed, sealed and delivered in presence of Joel D. Thompson."

This case was continued the preceding year to be argued in writing, and the opening argument was prepared by

*Washburn,* for the demandant.

This argument did not come into the hands of the Reporter.

*Cutting* argued for the tenant, contending in the first place, that nothing passed by the deed, but the house and stable, as personal property, and not the land on which they stood. Several circumstances were adverted to, tending to show that no land was expected to be conveyed. The consideration named was merely the value of the buildings to be carried off the land whereon they stood; there is no description of any land in the deed, but the description is " the house and stable on the mill lot," excluding all supposition of a conveyance of the land; it was a mere quit claim deed; and no part of the land was then owned by Jones, the grantor, but in part by the grantees. 8 Conn. R. 374.

There is no estoppel in consequence of that deed. It has no covenants whatever, and could create no estoppel, had it been a conveyance of land. But it conveys none.

Even if the land which Jones afterwards purchased has become the land of the demandant by way of estoppel, but two thirds in common can be held by him, and he can main-

tain no action against his co-tenant, without any ouster, or any thing equivalent.   *Colburn* v. *Mason*, 25 Maine R. 434.

*Washburn*, in reply, said, that the description of the land was definite in the deed, " the house and stable built and now occupied by me," " on the mill lot at Great Works," was merely further description.   There is no disagreement between the English decisions and our own on this subject.

This, like that in *Fairbanks* v. *Williamson*, cited in the opening argument, (7 Greenl. 96.) is a deed with covenants of special warranty.   They are in this respect substantially alike.

The opinion of the Court was drawn up, and read on June 30, 1848, by

SHEPLEY J. — The conveyances introduced by the demandant shows, that he has acquired the title to two undivided third parts of the premises, if those premises were conveyed by the tenant to Luther Dwinel and others, by his deed bearing date on March 29, 1833.   By that deed the tenant remises, releases, sells and forever quit claims " the house and stable on the mill lot at Great Works, built and now occupied by me." Testimony was introduced, which proves that the mill lot at Great Works was lot numbered seven according to Holland's survey ; that it was a large lot, and that it had been surveyed into a number of small lots.   That the house and stable stand upon the small lots numbered 16, 17, 23 and 24, and that these small lots were enclosed by a fence.

When buildings are conveyed and are described as standing on a lot of land, it usually becomes apparent, that it was not the intention to convey the land.   In such cases the superstructure only passes.   *Marshall* v. *Niles*, 8 Conn. R. 369.

When it is apparent, that the language stating, that they are standing upon a certain lot, is used only to describe the place, where they are situated, in like manner and with the like effect, as if the deed had stated them to be standing on a particular square or street, no inference can be justly drawn, that

it was not the intention, that the land, on which they stand, but not the lot named, should pass by the conveyance.

In this case the words " on the mill lot at Great Works," may have been, and they probably were, used to describe the place where they were to be found; for the deed affords no other means of ascertaining it by the designation of any town and street or other locality. If that clause be considered as introduced for that purpose only, and as having no tendency to disclose any intention respecting the quantity or quality of the estate conveyed, the description of the estate will then be found in the words, " the house and stable built and now occupied by me;" and the inquiry will be, whether by those words the land upon which they stand, will be conveyed.

A messuage, it has been said, consists of two things, the land and the edifice. That the chief substance is the soil, although the superstructure and the soil are one entire thing. Plowden, 170. Mr. Justice Ashhurst stated in the case of *Doe* v. *Collins*, 2 T. R. 502, that the distinction between house and messuage seemed to be too subtle, and that what would pass by the one would pass by the other. The rule of law may be considered as established from the earliest times, and as continued without any essential variation, that by the devise or grant of a messuage or house the land, on which it stands, will pass with it; unless there be something to indicate, that such was not the intention. Co. Litt. 5, b; Com. Dig. Grant, E. 6; *Carden* v. *Tuck*, Cro. Eliz. 89; *Hearne* v. *Allen*, Hutton, 85; *Doe* v. *Collins*, 2 T. R. 498. The same rule has been applied to devises, grants, and reservations of mills. *Whitney* v. *Olney*, 3 Mason, 280; *Howard* v. *Wadsworth*, 3 Greenl. 471; *Blake* v. *Clark*, 6 Greenl. 436; *Moore* v. *Fletcher*, 16 Maine R. 63. There are certain facts in this case clearly indicating that such could not have been the intention. It appears, that the tenant, when he made that conveyance, did not own the land, on which the buildings stood. He had built those buildings upon land owned by others. And one of the three persons, Rufus Dwinel, who owned the land, was also one of the three persons, to whom the

buildings were conveyed by the tenant's deed of release. The words used in that deed are all appropriate to convey buildings thus situated. There is no covenant of seizin or other language in the deed particularly applicable to an interest or estate in lands. What shall pass by a devise or conveyance is purely a question of intention. 2 Saund. 401, note 2. To decide, that the tenant intended by the use of such language to convey or attempt to convey land, which he did not own, would be to declare, that his intention was to do wrong by an attempt to disseize the real owner. And to suppose also that one of the grantees, Rufus Dwinel, intended to become a party to an attempt to take so much of the land from his co-tenants, and to convey it to his associate grantees. Such an intention cannot be admitted without proof. The inference therefore, which the law might make, that the land, on which the buildings stand, was intended to be conveyed, is prevented by the testimony proving the circumstances, under which that conveyance was made.

The tenant subsequently acquired the title to a tract of land embracing the premises demanded, by a deed from Rufus Dwinel, M. P. Sawyer and C. Q. Clapp, bearing date on Nov. 14, 1833. And it is contended that by his covenant contained in the prior deed to Luther Dwinel, Calvin Dwinel and Rufus Dwinel, he is estopped; and cannot be permitted to assert any title to be in himself, or that the subsequently acquired title enures to the prior grantees.

If the conclusion already stated be correct, that the house and stable only, and not the land, on which they stand, were conveyed, it necessarily follows, that the covenant contained in that deed, that he will not claim "any right or title to the aforesaid premises, or their appurtenances or any part or parcel thereof forever," applies only to the house and stable and not to the land; and that it can have no influence whatever upon the tenant's title to the land subsequently acquired, or upon his right to assert it in a court of law.

The demandant introduced copies of certain judgments, executions and levies made upon the premises by judgment

,creditors of the tenant, but did not show, that he had acquired ;any title under them. He must recover in this writ of entry upon the strength of his own title. Failing to show any title ;to the real estate demanded, a nonsuit is to be entered.