EDWARD STETSON et als. *vs.* EDWARD GRANT et als.

Franklin.    Opinion December 12, 1906.

*Real Actions.    Seizin.    Burden of Proof.    Evidence.    Deeds.    Presumptions.*
*Lands reserved for public uses.    State Land Agent.    Taxing soil of public lots.*
*Statute 1830, chapter 480, section 2.    Statute 1835, chapter 192, section 5.*
*Statute 1895, chapter 162, section 1.    R. S., chapter 9, section 65;*
*chapter 106, section 8.*

The legal presumption is that by a deed of conveyance of land, duly executed and recorded, the title passed, that the grantor had sufficient title to enable him to convey, and that the seizin and the title correspond with each other.

The plaintiff in a real action is bound to prove his allegations of seizin within twenty years.   To disprove this allegation the defendant under the general issue may show title in a third party under whom he does not claim. Such evidence is received not for the purpose of showing a better title in the tenant, but to show no title in the demandant within the twenty years. If seizin within twenty years is shown by the plaintiff, the defendant under the general issue, cannot show a subsequent conveyance to a third party under whom he does not claim.

Public Laws of 1830, chapter 480, section 2, empowered the land agent to select and designate for public uses one thousand acres of land to average in quality and situation in each township, which is or may be surveyed into small lots for sale or settlement.

*Held:* that a township, which had been surveyed for sale into lots mostly of six hundred and seventy acres each, fell within this description.

The land agent's return stated that he had selected land of an average value with the rest of the township.

*Held:* that this showed a substantial compliance with the requirements of the statute.

*Held:* also that the land agent was made the judge of the quality and situation of the land, and that his decision made in good faith cannot be reviewed or reversed.

There never has been in this State any authority in law for taxing the soil of the public lots or reserved lands, while the fee to the same is held in trust by the State.

In order to recover in a writ of entry the demandant must prove not only a right of entry at the time of the commencement of his action, but also such an estate in the premises as he has alleged.

On report.    Judgment for defendants.

Real action. Writ dated September 6, 1905. The declaration in the plaintiffs' writ is as follows:

"In a plea of land wherein the said plaintiffs demand against the said defendants the possession of a certain lot or parcel of land, situate in township numbered three, range four, in Franklin County, and bounded and described as follows, to wit: Commencing on the south line of said township at a point two miles from the south-west corner, thence northerly parallel with the west line of said township to Kennebago Lake, so called, thence in a southeasterly direction following the shore of said Kennebago Lake to the south line of said township thence westerly on the south line of said township to the point begun at. Whereupon the said plaintiffs say that they were lawfully seized of the demanded premises with the appurtenances in their demesne as of fee simple, within twenty years last past and ought now to be in the quiet possession thereof, but that the said defendants have since unjustly entered and hold the plaintiffs out."

Plea, the general issue with brief statement as follows: "That the defendants claim the right to the possession of the land described in the writ at the date of the writ, and also claim to have been in rightful possession thereof for the purpose of occupying the same with sporting camps, and have occupied the same with sporting camps, by virtue of and under the authority vested in them by a certain permit or lease thereof granted by Edgar E. Ring, Land Agent of the State of Maine, for and in behalf of the State of Maine, to Ed. Grant & Sons, dated Oct. 28, 1904, for the term of one year, to wit, from Nov. 1, 1904, to Nov. 1, 1905, and defendants claim still to be rightfully in possession under a like permit for the succeeding year."

Tried at the February term, 1906, of the Supreme Judicial Court, Franklin County. At the conclusion of the testimony, by agreement of the parties the case was reported to the Law Court for decision upon so much of the evidence "as is legally admissible, or as to which objection has been waived."

The case fully appears in the opinion.

*Frank W. Butler and Joseph C. Holman,* for plaintiffs.

*E. E. Richards, H. F. Beedy and Fremont E. Timberlake,* for defendants.

SITTING: WHITEHOUSE, SAVAGE, POWERS, PEABODY, SPEAR, JJ.

POWERS, J. This is a real action reported to the Law Court for decision; the writ is dated September 6, 1905, and the demanded premises are a part of lot thirty-three in township 3, R. 4, W. B. K. P. in Franklin County, according to the survey of Uriah Holt made in 1835. In 1860 the south half of the township was again surveyed into lots by Jonathan Russ and the demanded premises are the same as lot one hundred and forty-nine of this survey.

The plea is the general issue with a brief statement that the defendants claim the right to possession of the demanded premises and to have been in rightful possession thereof for the purpose of occupying the same with sporting camps, by virtue of and under the authority vested in them by certain permits or leases thereof granted by the land agent of the State of Maine for and in behalf of the State. Plaintiffs derive their title from duly recorded deeds from the State Land Agent, dated September 1, 1866, of the south half of the township, excepting lots 146, 147 and the south half of lot 135 according to the survey of Russ, reserving five hundred acres for public uses, and by intermediate conveyances. One of the plaintiffs appears to be a grantee in one of these State deeds, and the others are heirs or devisees of such grantees, or they are grantees in intermediate conveyances all of which were duly recorded. This makes a prima facie case for the plaintiffs. The legal presumption is that by a deed of conveyances of the land, duly executed and recorded, the title passed, that the grantor had sufficient seizin to enable him to convey, and that the seizin and the title correspond with each other. Blethen v. Dwinel, 34 Maine, 133; Webster v. Calden, 55 Maine, 165.

The demandants, however, declare on their seizin of the demanded premises within twenty years. They are bound to prove the seizin upon which they count, and it is competent for the defendants under the general issue to disprove this allegation of seizin by showing title in a third party even although the defendants do not claim under him. If seizin within twenty years is shown by the plaintiff in a writ of entry, the tenant cannot show a subsequent conveyance by

the plaintiff to a third party under whom the tenant does not claim, for no such issue is raised in the case. He may, however, always show that the plaintiff obtained nothing by his deed. Under the general issue the question is who has the better title. The demandant must recover on the strength of his title, not on the weakness of his adversary's. Possession is better than no title. Evidence to rebut the demandant's seizin within twenty years is received not for the purpose of proving a better title in the tenant, but to show no title in the demandant within that time. *Stanley* v. *Perley*, 5 Maine, 369; *Bussey* v. *Grant*, 20 Maine, 281; *Warren* v. *Miller*, 38 Maine, 108; *Chaplin* v. *Barker*, 53 Maine, 275; *Poor* v. *Larrabee*, 58 Maine, 543; *Rowell* v. *Mitchell*, 68 Maine, 21; *Hewes* v. *Coombs*, 84 Maine, 434.

For the purpose of disproving the alleged seizin of the plaintiff within twenty years, the defendants claim that the evidence shows that the demanded premises are a part of the reserved lands in the township which were duly located in 1836, thirty years before the deeds from the State Land Agent under which the plaintiffs derive title. Certainly, if this contention is borne out by the evidence, the land agent had no authority to sell and convey the public lots, and no title in the demanded premises passed by his deeds.

In 1836 the land agent made the following selection and designation of the public lots in the township:

" Be it known by these presents,

That I, John Hodgdon, agent of the State of Maine, to superintend the sale and settlement of the public lands by the authority in me vested by the laws of the State, do hereby select and reserve for uses by the law designated in township number three of the fourth range of townships west of Bingham's Kennebec Purchase in the County of Oxford, lots numbered twenty-seven and thirty-three according to the survey and return thereof by Uriah Holt in the year 1835, containing one thousand acres, being of average value with the rest of the township.

Given under my hand this second day of January in the year of our Lord one thousand eight hundred and thirty-six.

John Hodgdon, Land Agent."

This designation was made under Public Laws of 1830, chapter 480, section 2, in force at that time, which empowered and made it the duty of the land agent "to select and designate one thousand acres of land to average in quality and situation in each township which is or may be surveyed in small lots for sale or settlement to be reserved for such public uses." This selection was duly recorded in the Oxford registry of deeds on February 4, 1836, as provided by the last named act.

The first objection urged is that at that time the township had not been surveyed into small lots for sale or settlement. In 1835 Uriah Holt was directed by the surveyor general of the State to survey and lot the townships into sections of one mile square so that no section should contain more than seven hundred acres, and to divide such sections as were suitable for farming into lots not exceeding one hundred and seventy acres. His return and plan show that he lotted it mostly into sections of six hundred and seventy acres although some of the blocks on account of water contained less than that amount of land. Block thirty-three contained six hundred and seventy acres and block twenty-seven exclusive of water three hundred and thirty acres, so that the two lots selected for public uses together contained exactly one thousand acres and were both in the south half of the town. The land agent was bound to select and designate the reserved lands in all townships that had or might be surveyed into small lots for sale or settlement. Small lots for settlement might be one thing and small lots for sale another. This distinction was recognized by the legislature in 1831 by enacting that no townships should be sold until the land suitable for farming should be surveyed into lots not exceeding one hundred and seventy acres, and the remaining land into lots not exceeding seven hundred acres. Laws of 1835, chapter 192, section 5. The State was selling land in large quantities by townships and parts of townships, and we have no doubt that the township had been surveyed into small lots for sale within the meaning of the act which directed and empowered the land agent to select and designate the public lots.

It is insisted, however, that the location is invalid, because the land agent was directed to select " land to average in quality and situation

in each township" and the record shows that the land selected was "of an average value with the rest of said township." The force of this objection depends upon whether there is any substantial difference in the significance of the statutory language and that used by the land agent. We are unable to discover any. In speaking of wild land quality includes not only the soil but the kind and amount of the growth upon it, and situation includes proximity to floatable streams and accessibility for operation or settlement upon it. All these elements and none other determine its value. Wild land which averages in quality and situation with other land must average with it in value, and land of average value with other land must be of average quality and situation with it. The terms as used are synonymous. The land agent was not obliged to use the language of the statute in describing his acts; he was obliged to do what the statute authorized him to do, and this the return shows that he did.

Finally it is said that the plans filed in the case show that the land selected does not average in quality and situation with the rest of the township. This may be true, but we are unable to discover it as applied to the conditions existing seventy years ago when the selection was made. Even if true, it does not authorize this court to review or reverse the judgment of the land agent. The statute made him the judge of the quality and situation of the land, and by his judgment, honestly exercised, both the State and its grantees must abide.

The township is wild land, and notwithstanding the demanded premises are a part of the public lots the demandants contend that they have established a right of entry and seizin therein by the payment of state and county taxes thereon under R. S., chapter 9, section 65, formerly chapter 162, section one, of the Public Laws of 1895. It is there provided that when a person claims under a recorded deed describing wild land taxed by the State, and the records of the State Treasurer show that the grantee, his heirs or assigns have paid the State and county taxes thereon continuously for twenty years subsequent to recording such deed, such payment shall give said grantee or person claiming as aforesaid, his heirs or assigns, a

right of entry and seizin in the whole, or such part in common and undivided of the whole tract as the deed states, or as the number .of acres in the deed is to the number of acres assessed.   Admitting the soundness of the plaintiffs' legal proposition, they fail by their evidence to establish the alleged fact upon which it is based.   The only evidence of the payment of state and county taxes produced is the certificate of the State Treasurer that he has examined the records of his department " so far as relates to the payment of state and county taxes in township number 3, range 4, W. B. K. P. Franklin County" from 1881 to 1905 both inclusive, and finds that said taxes have been paid in full continuously by the plaintiffs and their predecessors in title.   There is nothing here to show that state and county taxes were either assessed or paid on the public lots in said township. There never was any authority in law for assessing any such taxes, and the presumption is that none were assessed.   Since April 26, 1897, the timber and grass upon such lots have been taxed ; but the soil, the fee to which the State itself holds in trust for the beneficiaries, has never been subject to taxation.   There is nothing in the certificate of the State Treasurer to indicate that any such extraordinary and unauthorized taxes were imposed upon the public lots in this township,   It simply shows that whatever state and county taxes were imposed in the township have been paid by the demandants and their grantors.

The evidence shows that the demandants have a right to cut and carry away the timber and grass upon the public lots.   Undoubtedly they have a right of entry for this purpose.   This however is not sufficient to enable them to maintain this writ of entry.   They have alleged in their writ that within twenty years last past they were seized in fee simple of the premises.   This they have failed to prove. Proof of both the right of entry at the time of the commencement of the action and of such an estate in the premises as they have alleged is necessary before they can recover, although the defendants show no title in themselves.   R. S., chapter 106, section 8; *Rawson* v. *Taylor,* 57 Maine, 343; *Hamilton* v. *Wentworth,* 58 Maine, 101.

The plaintiffs having failed to show any title to the demanded premises, it is unnecessary to determine what, if any, authority the

land agent may have to lease the public lots for the purpose of erect-
ing and maintaining sporting camps upon them.

*Judgment for the defendants.*