John W. Baker vs. John P. Webber et al.

Washington.   Opinion February 18, 1907.

*Taxation. Assessment. Tax Sales. Forfeitures. Tax Title. Amendment of Records. Revised Statutes, chapter 4, section 10; chapter 9, section 87.*

When a forfeiture of land is sought for non-payment of taxes assessed thereon, it must appear that there has been strict compliance with the essential provisions of the statute upon which the alleged tax title is founded. "To prevent forfeiture strict constructions are not unreasonable."

When a forfeiture of land is claimed for non-payment of taxes assessed thereon it must appear that the assessors made a proper record of the assessment of the tax or committed to the collector a list of assessments comprising an assessment of a tax upon the land.

Without statutory authority one who was formerly a town clerk, but who is no longer in office, cannot amend a town record made by him when clerk.

Revised Statutes, chapter 4, section 10, providing that " when omissions or errors exist in the records or tax lists of a town or school district, or in returns of warrants for meetings thereof, they shall be amended, on oath, according to the fact, while in or after he ceases to be in office, by the officer whose duty it was to make them correctly," is limited to amendments made under the sanction of an oath.

It is indispensible to the validity of a sale of real estate made by a tax collector for non-payment of taxes, that the collector be shown to have been legally elected and qualified to act in that capacity.

The case at bar was a real action to recover part of a township of land to which the plaintiff claimed title by virtue of a quitclaim deed from one who acquired his interest by deed from the inhabitants of the plantation, in which the land is situate, to whom the land was sold for non-payment of taxes assessed for the year 1897. *Held:* (1) that there was no legal evidence to show that any person was legally elected to the office of collector by the inhabitants or appointed thereto by the assessors of the plantation for the year 1897 or that any person was duly qualified to act as collector of taxes for that year; (2) that it does not appear that the assessors made any proper record of the assessment or that they committed to the collector any such list of assessments comprising the tax in question.

On report.   Judgment for defendants.

Real action to recover possession of certain real estate situate in the plantation of Grand Lake Stream, otherwise known as Hinckley township, Washington County. The plaintiff's alleged title to the premises in dispute was based upon a quitclaim deed given to him by Dexter A. Hall who acquired his supposed interest in the premises by a deed given to him by the inhabitants of said plantation, to whom the premises were sold for non-payment of taxes by Arthur Fleming who acted as collector of taxes in said plantation for the year 1897.

Tried at the April term, 1905, of the Supreme Judicial Court, Washington County. At the conclusion of the evidence, it was agreed that the case should be reported to the Law Court for determination, "that Court to draw such inferences from the evidence as a jury might do, and render such decision as the law and evidence requires."

The case appears in the opinion.

*Curran & Curran,* for plaintiff.

*C. B. & E. C. Donworth,* for defendants.

SITTING: EMERY, C. J., WHITEHOUSE, SAVAGE, POWERS, PEABODY, SPEAR, JJ.

WHITEHOUSE, J. This is a writ of entry to recover possession of certain real estate situated in the plantation of Grand Lake Stream, otherwise known as Hinckley township, in the County of Washington. The premises demanded comprise the whole of the plantation, but the defendants claimed to be seized in fee of only a part of it and disclaimed as to the residue.

The plaintiff claimed title by virtue of a quitclaim deed from Dexter A. Hall who acquired his interest by deed from the inhabitants of the plantation above named, to whom the land was sold for non-payment of taxes by Arthur Fleming who acted as collector of taxes in the plantation for the year 1897.

It is admitted that when this action was commenced, the defendants held and still hold title to the premises in dispute, unless it has devolved upon the plaintiff by virtue of the proceedings upon which the tax deed was based and subsequent conveyances. The defend-

ants' claim that the proceedings for the assessment and collection of the tax and for the sale of the land, are fatally defective in several particulars and that the evidence reported to the court fails to show that the requisite legal steps were taken to obtain a forfeiture of the lands for non-payment of taxes. They contend in the first place that no person was legally elected collector of taxes in that plantation for the year 1897, the year of the attempted assessment of the tax in question.

The only action taken by the inhabitants that year with reference to the choice of collector of taxes was at their annual March meeting, and so much of the record of this meeting as relates to the election and qualification of collector is as follows:

"Voted that the collection of taxes be given to lowest bidder if he gives the required bond, otherwise to be given to the next lowest bidder.

List of bids as follows:

|  | cts. | mills. |
|---|---|---|
| Geo. G. Elsemore, | 4 | 4 |
| A. J. Fleming, | 4 | |
| Chas. Fleming, | 3 | 6 |
| Wm. Elsemore, | 3 | 5 |

After which all of the officers elected appeared before me and were duly sworn.

After which the meeting was duly adjourned.

A true statement of proceedings.

March 31st, 1897.          Attest C. C. Hoar, Clerk."

This record purports to have been subsequently amended by C. C. Hoar, who acted as clerk in 1897; but it is admitted that he was not clerk at the time of the alleged amendment, and had ceased to hold the office long before that time, and was then residing in the State of Virginia. The amendment bears date June 28, 1897, but was in fact made in Virginia in February, 1905. It is as follows:

"June 28th, 1897.

This is to certify that Chas. Fleming & Wm. Elsemore, two lowest bidders for collection of taxes failed to give the required bond

and that A. J. Fleming, the next lowest bidder, has qualified by giving required bond and has been duly sworn by me.

                    Attest C. C. Hoar, Clerk."

It is admitted that Arthur Fleming is the same person as A. J. Fleming whose name appears in the list of bidders.

Whether the inhabitants at that meeting understood that by operation of the vote above recorded, the lowest bidder would be legally elected tax collector, or whether they intended that the assessors should make an appointment of collector under the instructions and limitations imposed by their vote respecting the lowest bidder, is not made entirely clear by the terms of the vote.    But inasmuch as no action appears to have been taken by the assessors in regard to the matter, except to issue their warrant to Arthur J. Fleming as a collector of taxes already chosen, it is manifest that they intended and expected to make a final choice of tax collector by force of the vote passed at that meeting.

It appears, however, from the original record that Arthur Fleming who acted as collector for that year was not the lowest bidder, and without further evidence he would not appear to have been elected by operation of the vote at the March meeting.    There is no other evidence bearing upon this question except the alleged amendment of the record made by Hoar in a distant State nearly nine years after he had ceased to be clerk.    It is obviously no part of the record of the doings of the annual meeting of March 31, 1897, because it purports to relate to transactions occurring June 28 of that year; and unless it can be accepted as a legitimate record of matters which it was the duty of a town clerk to record, it is not competent evidence of the facts to which it relates, but only a certificate of one who might have been required to testify in relation to such facts as a witness under oath, subject to cross examination.

It is undoubtedly an established rule in New England respecting the amendment of the records of a city or town, that the clerk who has made an erroneous or incomplete record, may while in office or after a re-election to the same office, amend or complete such record according to the truth, being liable like a sheriff who amends his

return, for any abuse of the right. *Bangor* v. *Orneville*, 90 Maine, 217, and cases cited. But without statutory authority one who was formerly a town clerk, but is no longer in office, cannot amend a town record made by him when clerk. " There is an obvious distinction between the two cases " says Shaw, C. J., in *Hartwell* v. *Littleton*, 13 Pick. 229. In the former case the clerk " still enjoys the confidence of the town, is by their vote entrusted with the custody of their records and is held responsible for their purity and correctness under the sanction of an official oath."

It is true that section 10, chap. 4, R. S., provides that when errors and omissions exist in such records " they shall be amended on oath according to the fact while in or after he ceases to be in office by the officer whose duty it was to make them correctly." But the certificate of the former clerk made in February, 1905, in the case at bar, was not made under the sanction of an oath, and cannot be deemed an amendment of the record under the provisions of this statute. There is therefore no legitimate evidence in the case to show a compliance with the condition imposed by the vote of the inhabitants respecting the choice of a collector of taxes for the year 1897, and no legal evidence to show that any person was legally elected to that office by the inhabitants or appointed thereto by the assessors of the plantation for that year.

Nor is there any legal evidence of the qualification of Arthur J. Fleming as tax collector. The record of the annual meeting of March 31, only shows that the officers who had then been elected were " duly sworn." The certificate of C. C. Hoar, made nearly nine years later does purport to recite that A. J. Fleming was sworn June 28, 1897, but it has been seen that this certificate is not a part of the record and not legitimate evidence of the fact.

In *Payson* v. *Hall*, 30 Maine, 319, it was held to be indispensable to the validity of a sale of real estate made by a collector for non-payment of taxes, that the collector be shown to have been legally qualified to act in that capacity. "The party is required" said the court, " to produce the collector's deed, not the deed of a person assuming without right to act in that capacity. The tax payer is entitled to have his interest protected in the sale of his property by the obligations

imposed by the official oath." See also *Gould* v. *Monroe*, 61 Maine, 544.

But there is another fundamental defect in the proceedings reported which must be deemed fatal to the validity of the plaintiff's tax deed ; for when a forfeiture of land is sought for non-payment of taxes assessed thereon, it must appear that there has been strict compliance with the essential provisions of the statute upon which the alleged tax title is founded. "To prevent forfeitures strict constructions are not unreasonable." *Cressey* v. *Parks*, 76 Maine, 532.

Here the report fails to show any proper record of an assessment of the tax in question. The statute (sect. 87, ch. 9, R. S.) provides that the assessors shall make a record of their assessment and of the invoice and valuation from which it was made" etc. In this case at the close of the assessors' record there is a certificate that the "foregoing pages contain a list and valuation of polls and estates, real and personal, liable to be taxed" etc. But there is nowhere in the record a positive statement that they have assessed on the polls and estates of resident proprietors and on the estates of non-resident proprietors the amount voted and raised by the plantation. It would be a reasonable inference from the certificate signed by them, that the "list" therein referred to, which comprised the defendants' lands, was the inventory or valuation from which the assessment was to be made, but which, so far as the record shows, never was made. It is true that in actions to recover taxes, not involving a forfeiture of the entire estate upon which the tax is assessed, it has been held that in the absence of such a record of the assessment signed by the assessors, the warrant committed to the collector, being an original paper, complete in itself, may be sufficient proof of the assessment. *Bath* v. *Whitmore*, 79 Maine, 182. But if it be conceded that this rule could properly be extended to cases involving a forfeiture of the property for non-payment of the tax upon it, the record here fails to show that the papers committed to the collector signed by the assessors, were accompanied by any list comprising an assessment of a tax upon the defendants' land. If any list of assessments was in fact committed to the collector, there is nothing in the record signed by the assessors showing what the list comprised.

Several other irregularities are apparent in the proceedings upon which the plaintiff's claim is based, but in view of the conclusion reached respecting the defects above considered, it is unnecessary to pursue an inquiry into any further irregularities.

It is the opinion of the court that the entry must be,

*Judgment for the defendants.*