Iva Hunnewell HANN

v.

Robert D. MERRILL et al.

Iva Hunnewell HANN

v.

Ralph L. POLAND et al.

Supreme Judicial Court of Maine.

June 25, 1972.

On Motion for Reconsideration
May 24, 1973.

546

L. Damon Scales, Jr., Auburn, for plaintiff.

Marshall, Raymond & Beliveau by John G. Marshall, Lewiston, Edwin R. Michniewich, Joseph B. Campbell, Augusta, Irving Isaacson, Lewiston, for defendants.

Before DUFRESNE, C. J., and WEBBER, WEATHERBEE, POMEROY, WERNICK, and ARCHIBALD, JJ.

WEATHERBEE, Justice.

The two Defendants claim title ownership of the four lots of land in issue by virtue of deeds to their predecessors in title from the Town of Poland which the Defendants contend acquired title through the foreclosure of liens placed on the property for unpaid taxes assessed in the years 1961, 1962 and 1964. The Plaintiff, who has the record title to three of the lots of land except for the effect of these tax liens, brings these two real actions to recover the property. The Plaintiff's only title to the fourth lot, the Philip Winslow lot, had been acquired by virtue of a quitclaim deed, dated April 28, 1964, from the Town of Poland, similar to those given by the Town to the Defendants' predecessors in title to the four lots. The facts in the two cases are essentially parallel and the legal issues are identical. The Justice in the Superior Court gave the Plaintiff judgment for possession of the land in

question and the matter comes before us on the Defendants' consolidated appeals.[1]

We find that the issue of validity of the appointment of the Town Manager as Tax Collector for the years 1961, 1962 and 1964 proves determinative of both appeals.

After hearing on the two consolidated cases the Single Justice found that:

"7. The Town Manager of Poland, who served in that capacity during all of the years in question, was first appointed March 30, 1959, and his one-year contract of that date provided he should exercise the duties of Town Treasurer and Tax Collector.

8. The procedure for annual reappointment of the Poland Town Manager, in 1960 and in all subsequent years through 1966, kept in each instance to the following pattern: After the close of a formal Selectmen's Meeting, and in the absence of the Town Manager, the Selectmen informally discussed renewal of his contract. Thereafter at a formal Selectmen's meeting there was a motion and vote to reappoint the manager, making no mention of the offices of Treasurer or Tax Collector; and a new or renewal contract was prepared and signed by the Selectmen and the Manager, again making no mention of the offices of Treasurer or Tax Collector.

9. The evidence clearly establishes that the Selectmen, Manager and townspeople all considered the Manager to be the Town Treasurer and Tax Collector, and that he acted in both of said capacities *de facto*; but the evidence also establishes that he did not hold either office *de jure*."

As we have frequently held, title acquired by virtue of a tax lien is a nullity unless all conditions precedent to its foreclosure have been complied with. The law protects the delinquent taxpayer from forfeiture of his property except under strict construction of statutory requirements. Arsenault v. Inhabitants of the Town of Roxbury, Me., 275 A.2d 598 (1971).

The Defendants, relying upon the foreclosure of the tax lien mortgages and the expiration of the periods of redemption, have the benefit of the statutory principle that the tax lien mortgage is

" . . . prima facie evidence in all courts in all proceedings by and against the municipality, its successors and assigns, of the truth of the statements therein and after the period of redemption has expired, of the title of the municipality to the real estate therein described, and of the regularity and validity of all proceedings with reference to the acquisition of title by such tax lien mortgage and the foreclosure thereof." [2]

At this point, we should note that the Selectmen's appointment of the Manager as Treasurer had no validity. During the entire period in question the provisions of R.S.1954, Chap. 91, § 15 and later of 30 M.R.S.A. § 2055 required that the Treasurer be elected by ballot at the annual town meeting and this office was not at that time one which the Selectmen could fill by appointment.[3]

Although it is clear that the Manager was not legally appointed to serve as Treasurer we see little value in discussing the issue of whether a Treasurer's duties are such as to affect the validity of tax liens as we consider that the qualifications of

---

1. No appeals were taken by the corporate Defendants who were holders of mortgages on the real estate. The Plaintiff had also claimed damages from the Defendants, which the Justice denied her. Her cross-appeal from this denial was abandoned in this Court. Both Defendants had counterclaimed for betterments and the Presiding Justice gave Plaintiff judgment on Defendant Merrill's counterclaim but made no mention of that of Defendant

Poland. Neither Defendant has raised the issue of counterclaims before us and we treat the issues as abandoned. State v. Trott, Me., 289 A.2d 414 (1972).

2. R.S.1954, Chap. 92, § 99, 36 M.R.S.A. § 943.

3. This limitation no longer prevails. P.L. 1969, Chap. 438, § 3, amending 30 M.R.S.A. § 2055.

the Tax Collector are critical as to this issue. The Tax Collector is the sole officer authorized by the statute to sign and record in the Registry of Deeds the tax lien certificate, to file the copies of the certificates in the Treasurer's office, and to send notices to the record holders of mortgages.

It was held by this Court in Payson v. Hall, 30 Me. 319 (1849), and reiterated in Baker v. Webber, 102 Me. 414, 67 A. 144 (1907), that the effectiveness of a tax deed executed by a Tax Collector depended upon proof that the Collector has been legally elected to the office.

"The party is required to produce the *collector's* deed not the deed of a person *assuming* without right to act in that capacity." Payson v. Hall, supra, 30 Me. at 326. (Emphasis added.)

While these cases dealt with earlier methods of enforcing tax collection there can be little doubt that equally persuasive reasons for proof of qualifications of the Tax Collector are present when the ownership in issue is dependent upon a title obtained under automatic foreclosure of tax lien mortgages which no one but a Tax Collector *de jure* may execute. A valid appointment of a Tax Collector is crucial to the viability of his tax liens.

The Plaintiff, in light of the statutory declaration of prima facie proof of regularity, has the burden of demonstrating that the appointment of the Manager as Tax Collector did not comply with legal requirements, as she has raised this issue.

The authority for appointment of a Town Manager to other town offices at the times concerned with the 1961 and 1962 taxes is found in P.L. 1957, Chap. 405, § 41 which became R.S.1954, Chap. 90–A, § 41, and reads:

"Sec. 41. Town manager form of government. A town may adopt the town manager form of government at a meeting held at least 60 days before the annual meeting.

I. At the time of adoption, the town may determine which offices the manager is to hold, or may delegate that power to the selectmen.

A. A manager may not be a moderator, selectman, assessor or member of the school committee.

B. When a town had determined the offices which its manager is to hold, the selectmen shall appoint him *annually* to each of those offices." (Emphasis added.)

In 1961 and 1962 it was voted at the annual town meeting that the Manager should hold the offices of Treasurer and Tax Collector and it thus became the duty of the Selectmen, when engaging a Manager, to appoint him to these offices also. In 1963 this statute was amended to state that the Selectmen, independently of the town meeting, shall determine what other offices the Manager shall hold.

The Defendants attack the Justice's conclusion that the Town Manager did not hold these offices *de jure*. They point out that when in 1959 the town adopted the Town Manager form of government this Town Manager's original written contract stipulated that the Manager should exercise the duties of Town Treasurer and Tax Collector. They argue that each annual decision by the Selectmen to continue the same Manager's employment as Manager constituted an appointment to those other offices also.

Although the testimony—and, at least one of the minutes—speak of a successive Manager's contract as a "renewal", none of these annual renewals of the Manager's contracts mention the office of Tax Collector and the original minutes of the Selectmen's meetings are silent as to any appointments of Tax Collector after 1959.

The testimony shows that the Selectmen's annual agreements with the Manager that he should also hold the office of Tax Collector were arrived at very informally. Witnesses testified that there was "a

lengthy discussion" about it, that the Selectmen so "mutually agreed", and that "it was the understanding". The Town Manager testified "it was my understanding that when this [1961] contract was signed it was a renewal [of the original contract]".

The testimony of the witnesses as to this is exemplified by this passage during direct examination of Mr. Fernald, a Selectman:

"A  It had been the generally accepted practice that while the Selectmen were discussing the town manager's contract the town manager was absent, because we felt that it was better when he wasn't there, and his duties were discussed and the 1960 contract was renewed, the 1959 contract.

We discussed the different duties he was to perform. We discussed his ability as to each, and came to the agreement, and this was at a Selectmen's meeting when, at that time, no minutes of those meetings were kept. They were special meetings. And the town manager was advised the following day that we had signed his contract.

Q  Was it specifically determined that the town manager was to serve as tax collector, treasurer, road commissioner, overseer of the poor in 1960?

A  In discussing the contract, yes. We renewed his contract on the previous year's contract to perform those duties.

Q  And you were one of the signers of the 1960 contract?

A  Yes, sir.

Q  When it was signed it was specifically understood, although not contained in the contract, that he was to serve as tax collector, treasurer, road commissioner and overseer of the poor?

A  That is right, sir."

More than six years later, on July 29, 1969, the Secretary of the Board of Select-

men *purported* to amend the minutes by adding:

"I, R. A. Waterhouse, Jr., under oath, hereby amend the record of the Selectmen's Meeting of the Town of Poland held March 19, 1963 by adding the following omission therefrom:

'Voted, that Raymond F. Parsons is appointed tax collector, treasurer, road commissioner and overseer of the poor for the Town of Poland for the year April 1, 1963 to March 31, 1964.' "

A similar amendment was added at the same time for each year now in issue.

■ We are of the opinion that these late amendments—however well intended—cannot destroy the intervening rights of owners of affected properties. Moreover, they do not purport to show that the appointments of the Collector during the years in question were made in writing—a statutory requirement which none of the rest of the evidence has been able to supply.

P.L.1957, Chap. 405, § 36 subd. II is explicit in its demands for formality of appointment of town officials:

"The appointment of any town official or deputy shall be in writing and shall be signed by the appointing party."

■ In construing a statute as being mandatory or directory the purposes of the statute as well as the language must be considered. It has been considered by most jurisdictions that the word "shall" should be construed as imperative and mandatory and not merely directory and permissive. Barnes v. State ex rel. Pinkney, 236 Md. 564, 204 A.2d 787 (1964); North Hampton Racing & Breeding Ass'n., Inc. v. Conway, 94 N.H. 156, 48 A.2d 472 (1946); Harvey v. Board of Chosen Freeholders of Essex County, 30 N.J. 381, 153 A.2d 10 (1959); 50 Am.Jur., Statutes, § 28; 82 C.J.S. Statutes § 380.

In our opinion the language of this statute lends itself to a logical mandatory in-

terpretation. The Legislature recognized the necessity of having permanent records each year as to who was holding the various town offices. Persons dealing with town officials needed to know with assurance the identity of the person authorized to act. The Legislature, aware of the frailties of human memory and the possibilities of misinterpretation of official actions taken orally and informally, determined that the purpose of certainty could best be met by requiring written appointments to town offices. We conclude that the language "shall be in writing" is a "matter of substance" and not a "matter of convenience" and that the consequences that result from construing the language as mandatory are reasonably anticipated to promote the purposes of the statute. International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, Local 145 v. Shapiro et al., 138 Conn. 57, 82 A.2d 345 (1951).

■ We have concluded that the tax lien mortgages in question were invalid unless the Tax Collector held the office *de jure* during 1961, 1962 or 1964 and that he did not hold the office unless his appointment was in writing. The statute has made the filing of the tax lien mortgage prima facie proof of the regularity of all prior proceedings necessary to its validity including, of course, the proper appointment of the Tax Collector. Inhabitants of Town of Lincolnville v. Perry, 150 Me. 113, 104 A.2d 884 (1954).

". . . [P]rima facie evidence in legal intendendment means evidence which if unrebutted or unexplained is sufficient to maintain the proposition, and warrant the conclusion to support which it [has been] introduced . . ." Carroll v. Boston Elevated Railway Co., 200 Mass. 527, 86 N.E. 793, 797 (1909)..

■ While no witness testified specifically that there were no written appointments of the Tax Collector, no written appointments were offered and the witnesses described at length the manner in which the Selectmen had informally and verbally decided that the Manager should serve as Tax Collector and that the Manager "was advised the next day that we had signed his contract [i. e. his contract as Manager]". From the abundance of testimony as to the manner in which the appointment *was* made, an inference could be drawn that there was no appointment in writing, thus overcoming the statutory prima facie proof of regularity.

■ While the Single Justice made no specific finding that the appointments of the Tax Collector were not in writing, he found that the procedures followed by the Selectmen fell short of constituting valid appointments to that office. This finding was not clearly erroneous.

■ There was no error in the Justice's conclusion that the Plaintiff was entitled to judgment for possession of the land described in her complaint against the Defendant Ralph L. Poland, Sr. which is Docket No. 4119 or in his finding that the Plaintiff was entitled to judgment for possession of the first parcel of land described in her complaint against the Defendant Robert D. Merrill which is Docket No. 4118.

A different situation prevails, however, in the Plaintiff's claim against Mr. Merrill for possession of the so-called Philip Winslow lot, the second parcel described in the complaint which is Docket No. 4118.

In order to be entitled to judgment for possession of this parcel the Plaintiff must prove the title she has alleged. Dolloff v. Gardiner, 148 Me. 176, 91 A.2d 320 (1952); Wyman v. Porter, 108 Me. 110, 79 A. 371 (1911); Day v. Philbrook, 89 Me. 462, 36 A. 991 (1897).

■ The Plaintiff must show a better title than the Defendant's. Coffin v. Freeman, 82 Me. 577, 20 A. 238 (1890). If the Plaintiff shows no title she cannot prevail even though she proves the Defendant has no title. Wyman v. Porter, supra; Derby

v. Jones, 27 Me. 357 (1847). Although we have said that possession under color of title is better than no title, Wyman v. Porter, supra; Stetson v. Grant, 102 Me. 222, 66 A. 480 (1906), here the Plaintiff has shown no possession under color of her only claimed source of title—the 1964 deed from the town.

It follows that the invalidity of the appointment of the Tax Collector in 1961 rendered the town's tax lien for the 1960 taxes on the Philip Winslow lot ineffective and therefore the town acquired no title to the Philip Winslow lot by virtue of this lien. In short, the record here does not demonstrate any title to this lot in either Plaintiff or Defendant.

The Plaintiff's appeals are dismissed.

The Defendant Ralph L. Poland's appeal is denied.

The Defendant Robert D. Merrill's appeal is sustained. Remanded to the Superior Court for a revised judgment consistent with this opinion.

On Motion for Reconsideration

This opinion is supplemental to our opinion filed on July 25, 1972. On August 7, 1972 the Defendants-Appellants moved for reconsideration of the opinion. Briefs respecting the issue raised by the motion were filed by counsel for both sides.

The issue presented by the Defendants-Appellants concerns the effect which should be given to 36 M.R.S.A. § 943 and the common law presumption of regularity of acts of public officers.

It will be recalled that the Defendants-Appellants claimed title to certain real estate by virtue of deeds from the town of Poland. The Defendants-Appellants contend that the town had acquired title through the foreclosure of liens placed upon the property by the Tax Collector for three years' unpaid taxes. The Plaintiff-Appellee was the owner of the property at the time the taxes were assessed. The dispositive issue before the Justice in the Su-

perior Court was the validity of the appointment of the Tax Collector. The Justice ruled adversely to the Defendants-Appellants, holding that the Tax Collector had acted *de facto* but that he did not hold his office *de jure*. The Defendants-Appellants appealed.

We denied the appeal, pointing out that P.L.1957, ch. 405, § 36, §§ II (now 30 M.R.S.A. § 2060, §§ 2) requires that the appointment of town officials be in writing and holding that in the case of Tax Collectors this was a "matter of substance" and that therefore this officer did not hold his office *de jure* unless his appointment was in writing. We held that the Justice's finding that the procedures followed by the Selectmen fell short of constituting valid appointments to that office was not clearly erroneous.

The Defendants-Appellants now urge us that we inaccurately applied the substantive law relative to presumptions, particularly R.S.1954, ch. 92, § 99 as amended by P.L.1955, ch. 399, § 1 (which is now 36 M.R.S.A. § 943) which reads in part:

"The tax lien mortgage shall be *prima facie evidence* in all courts in all proceedings by and against the municipality, its successors and assigns, of the truth of the statements therein and after the period of redemption has expired, of the title of the municipality to the real estate therein described, and of the regularity and validity of all proceedings with reference to the acquisition of title by such tax lien mortgage and the foreclosure thereof." (Emphasis supplied.)

The Defendants-Appellants argue that neither the prima facie effect created by the statute nor the common law presumption of regularity in the acts of public officials can be overcome by an inference.

In our opinion of July 25, 1972 we discussed the effect of this statute and held that an inference that there was no appointment in writing could be drawn from evidence thus overcoming the statutory prima facie proof regularity. The Defend-

ants-Appellants contend that we did not give sufficient consideration to the effect of the statute and the common law presumption.

Further consideration of this matter has led us to the conclusion that, in the posture in which the parties stood, the Defendants-Appellants actually derive no benefit from this statute and that we originally gave it more significance than it deserves.

Our Court has frequently recognized the use of disputable presumptions [1] and prima facie evidence, sometimes using the terms interchangeably, and without indicating any distinction in the use of these procedural devices. We must reexamine our use of these terms.

We have several times discussed the nature of presumptions. In Kittery Electric Light Co. v. Assessors of the Town of Kittery, Me., 219 A.2d 728, 743 (1966) we said:

". . . In Hinds v. John Hancock Ins. Co., 155 Me. 349, 155 A.2d 721, 85 A.L.R.2d 703, we established the use to be made of rebuttable presumptions. They are not 'evidence' in the scales with weight to be 'overcome'. Rebuttable presumptions are rather merely procedural devices in the trial of a case, which have the effect of shifting to the other party, not the burden of proof, but the burden of going forward with evidence."

In Manchester v. Dugan, Me., 247 A.2d 827, 829 (1968) we compared the nature of presumptions with that of inferences:

"The words 'presumption' and 'inference' are often used synonymously but a distinction exists. A presumption is a conclusion which a rule of law directs shall be made from proof of certain facts but an inference is a deduction which reason and logic dictates shall be made from a fact situation. An inference is a deduction as to the existence of a fact which human experience teaches us can reasonably and logically be drawn from proof of other facts. An inference must be based on probability and not on mere possibilities or on surmise or conjecture and must be drawn reasonably and supported by the facts upon which it rests. . . ."

We pointed out in Hinds v. John Hancock Mut. Life Ins. Co., 155 Me. 349, 354, 155 A.2d 721, 726 (1959) that disputable presumptions are mandatory. That is, it may be declared legislatively or judicially that proof of certain fact-groupings results in proof of a certain presumed fact *as a matter of law*—if no contrary evidence is offered.

While many courts speak of *permissible* presumptions—that is, presumptions which the jury is *permitted* to draw but not *compelled* to draw—we have concluded that, at least when used in criminal cases, the device is better described as an inference of fact. State v. Poulin, Me., 277 A.2d 493, 498 (1971); State v. Collamore, Me., 287 A.2d 123, 125 (1972).

The effect of both the disputable mandatory presumption and the permissible presumption or inference of fact is to get "to the jury" the proponent who relies upon them.[2] C. McCormick, Law of Evidence, §§ 308, 310 (1954). Both are disputable.

certain persons are wholly dependent for support upon a deceased employee under our Workmen's Compensation Act. 39 M.R.S.A. § 2; Albee's Case, 128 Me. 126, 145 A. 742 (1929).

1. We are not concerned here with conclusive mandatory presumptions. Examples of conclusive mandatory presumptions would be the judicially created conclusive presumption that a child under the age of 7 years is incapable of criminal guilt (Allen v. United States, 150 U.S. 551, 558, 14 S.Ct. 196, 198, 37 L.Ed. 1179, 1181 (1893); 1 R. Anderson, Wharton's Criminal Law and Procedure, § 35) and the statutory conclusive presumption that

2. Of course, if there is no other disputed issue of fact the party who has the benefit of an unrebutted mandatory presumption may be entitled to a directed verdict in a civil action.

■ The mandatory presumption shifts the burden of going forward with evidence to dispute the claimed fact to the other party. If the mandatory presumption is not rebutted, it is the duty of the trier of the fact to accept the presumed fact as proved. On the other hand, the inference of fact which human experience has taught us may reasonably and logically be drawn from proof of certain other facts will serve to get the proponent "to the jury" but the jury may find that those particular facts as presented, even if undisputed, do not justify a drawing of the inference from those facts or the jury may find that the inference has been overcome by the presentation of disputing facts.

■ If evidence is presented which disputes the effect of the mandatory presumption the procedural rule announced in *Hinds* operates and the presumption persists until the contrary evidence persuades the fact finder that the balance of probabilities is in equilibrium. Hinds v. John Hancock Mut. Life Ins. Co., supra, 155 Me. at 364, 155 A.2d at 730.

■ The presumption of regularity of the acts of public officers is a disputable mandatory presumption. Kellar v. Savage, 20 Me. 199, 203 (1841). The phrase "prima facie evidence" requires further examination. In using the phrase "prima facie evidence" in this section, did the Legislature intend to create an entirely new device which has an office distinct from that of either a disputable mandatory presumption or an inference of fact?

Black's Law Dictionary, 1353 (4th ed. 1951) defines prima facie evidence as

"Evidence good and sufficient on its face; such evidence as, in the judgment of the law, is sufficient to establish a given fact, or the group or chain of facts constituting the party's claim or defense, and which if not rebutted or contradicted, will remain sufficient.

The words "prima facie evidence" appear frequently in both our statutes and our decisional law. For example, in The Inhabitants of Augusta v. The Inhabitants of Vienna, 21 Me. 298 (1842) it was held that where a statutory notice which was required preliminary to liability for removal of a pauper had been deposited in the mails timely and had been received, this was "prima facie evidence" that its receipt was also timely. The Court said the result was a "presumption" of timeliness which might be overcome by evidence.

The deposit of a letter, properly addressed, and stamped in the post office, has been held to be "prima facie evidence" of its receipt by the addressee by due course of mail but this principle was held not to apply when the evidence showed the letter was *not* in fact so received. Chase v. Inhabitants of Surry, 88 Me. 468, 34 A. 270 (1896). See also Ross v. Reynolds, 112 Me. 223, 225–226, 91 A. 952, 953 (1914).

Our Court has often stated that a violation of the law of the road is "prima facie evidence" of negligence on the part of the violator.

" . . . It does not establish absolutely the defendant's liability. But, nothing else appearing, it sustains the burden of proving the defendant's negligence, which burden primarily rested upon the plaintiff. It creates a presumption in favor of the plaintiff which the defendant must overcome if he would prevail." Dansky v. Kotimaki, 125 Me. 72, 74, 130 A. 871, 873 (1925). See also Bennett v. Lufkin, 147 Me. 216, 218, 85 A.2d 922, 923 (1952); Elliott v. Montgomery, 135 Me. 372, 374, 197 A. 322, 323 (1938); Callahan v. Amos D. Bridges Sons, Inc., 128 Me. 346, 348, 147 A. 423, 424 (1929).

The Court used "prima facie evidence" and "presumption" interchangeably in these cases and was describing a procedural device which, for policy reasons, had been judicially established and which (although not evidence to be weighed by the jury), entitled the party making use of it to a de-

termination of negligence as a matter of law (not eliminating the necessity of proof of causation, of course) unless there was evidence introduced from which the jury could find that the conduct of the other party, although in violation of the law, was not in fact negligent conduct.

In Rand v. Skillin, 63 Me. 103, 104 (1873) we reasserted the rule that "a warranty deed to the plaintiff, or a warranty deed to one from whom the plaintiff has a quit claim deed, is sufficient prima facie evidence of ownership, and will authorize a verdict for the plaintiff, unless the defendant proves a better title."

A similar effect was given to the phrase "prima facie evidence" in the statute which was the predecessor of the paragraph of 36 M.R.S.A. § 943 which is now under consideration.

In 1936 that statute provided that in a trial involving the validity of any sale of real estate for non-payment of taxes,

" . . . it shall be sufficient for the party claiming under it, in the first instance, to produce in evidence the collector's or treasurer's deed, duly executed and recorded, which shall be prima facie evidence of his title . . .." R.S.1930, ch. 14, § 87.

In City of Old Town v. Thomas, 134 Me. 285, 289, 186 A. 663, 665 (1936) the plaintiff City presented such deeds and also the formal return of the tax sale by which the City claimed the owner had been divested of his title. The return had not been signed by the officer, in violation of a statutory mandate. The defendant offered no evidence. The Court rejected the City's contention that as the tax deed made out a prima facie case and as the defendant had offered no evidence, the City was entitled to judgment, holding that the "prima facie showing" of the tax deeds had been "overcome" by the City's own production of the defective return.

We turn now to the use of the phrase "prima facie evidence" in the statute now under consideration. We believe that the Legislature's purpose was to enable municipalities and litigants claiming title through municipalities to avoid the expensive and time consuming proof of the correctness of every step involved in a municipality's acquisition of title by the tax lien process. The statute is based on what Professor Torcia calls "procedural expediency". 1 C. Torcia, Wharton's Criminal Evidence 144 (13th ed. 1972).

The Legislature was no doubt familiar with the Court's interpretation of the effect of the use of the phrase "prima facie evidence" in other statutes and concluded that the phrase, as so interpreted, would accomplish the purpose of 36 M.R.S.A. § 943. McLellan v. Lunt, 14 Me. 254, 258 (1837).

We are convinced that the statute was intended to create only a procedural device in the nature of a mandatory rebuttable presumption which, in lieu of presentation of evidence as to regularity by the party claiming regularity, was intended to shift the burden of going forward with evidence as to regularity upon the party claiming irregularity. The common law presumption of regularity of the actions of public officials has the same effect. Both are procedural devices. Neither is evidence.

With this understanding of the true nature of the statutory device and its resemblance to a mandatory rebuttable presumption, it becomes clear that neither has significance in this case.

We said in Kittery Electric Light Co. v. Assessors of the Town of Kittery, supra, 219 A.2d at 743:

". . . A party however has no need of the aid of rebuttable presumption in order to shift the burden of going forward with evidence to an opponent who *already* has been charged from the outset with the burden of proof or persuasion with respect to a particular issue. As was stated in 20 Am.Jur. Evi-

dence, § 157: 'During the trial of an action, the party *who has the burden of proof upon an issue* may be aided in establishing his claim or defense by the operation of a presumption, . . . a presumption may operate to relieve a party of the duty of presenting evidence until his adversary has introduced proof to rebut the presumption.' [Emphasis supplied]. In the instant case, the plaintiff taxpayer had the burden of proof from the beginning; this necessarily included the subsidiary burden of going forward with evidence. There was no occasion for the Justice below to advert to the presumption of validity attaching to the acts of public officials since that presumption could do no more than cast upon the plaintiff taxpayer a burden which it had already assumed."

Here the Plaintiff maintained that she still had title to the property because of an irregularity in the town's claimed acquisition of title through the tax lien procedure. Neither the statute nor the presumption shifted the burden of going forward to her—she had the burden of proof of irregularity from the beginning. The measure of her burden was proof by a fair preponderance of the evidence.

Therefore, it is not necessary for us to consider whether the Legislature intended that the effective weight of the device should disappear when "contrary evidence persuades the factfinder that the balance of probabilities is in equilibrium" (Hinds v. John Hancock Mut. Life Ins. Co., supra, 155 Me. at 364, 155 A.2d at 730 (1959) or when some other quantum of credible contrary evidence is received. Any expression of opinion as to this would be dicta and particularly undesirable as this precise issue was not argued.

In our opinion of July 25, 1972 we discussed the evidence presented as to the manner in which the Selectmen purported to appoint the Town Manager to the office of Tax Collector. It can be fairly stated in summary that the evidence showed that while the employment of the Town Manag-

er was by means of an annual written contract it was "understood" and mutually agreed that he should also serve as Tax Collector. One Selectman agreed that "technically" the Town Manager wasn't "appointed" but it was "the understanding" that he should also serve in that capacity. Near the close of the trial after a great deal of evidence had been presented as to the informal manner in which the Tax Collector was appointed, the Justice inquired if the manner of the Town Manager's appointment could not be stipulated and Defendants-Appellants' counsel replied, "I can stipulate that the only provisions made are as brought out in the direct testimony and contained in the minutes." From the abundance of direct testimony as to the manner in which the appointment *was* made and from the minutes an inference could properly be drawn that it was *not* made in writing. The Justice could have found that by means of this inference the Plaintiff satisfied her burden of proof.

Our reconsideration has satisfied us that the entry on Defendants-Appellants' motion must be:

The opinion of July 25, 1972 shall stand.