MILES H. WYMAN AND ALMON B. SARGENT vs. CHARLES N. PORTER.

Franklin.    Opinion March 7, 1911.

*Real Actions.    Writ of Entry.    General Issue.    Burden of Proof.    Color of Title.
Right to Recover.    Evidence.    Mortgages.    Transfers.    Deed by Mortgagee.
Effect.    Foreclosure Proceedings.    Validity.    Executors and
Administrators.    Foreign Administrators.    Powers.
Revised Statutes, 1841, chapter 125, section 5.*

The general issue in a writ of entry puts the plaintiff's title in issue, and per-
mits the defendant to rebut the plaintiff's proof, set up title in himself or
merely show that the plaintiff has no title.

The burden is on the plaintiff in a writ of entry to show the title he has
alleged, and he must recover, if at all, on the strength of his own title.

Possession under color of title is better than no title.

If in a writ of entry the plaintiff shows no title, he cannot prevail even
though the defendant has no title.

Where the plaintiffs in a writ of entry offered a warranty deed from C. to S.
and quitclaim deeds from the heirs of S. to themselves, *held* that this
made a prima facie case for the plaintiffs.

Where the defendant in a writ of entry was in possession under color of title
afforded by a defective sheriff's deed, *held* that it was incumbent upon the
plaintiffs, to entitle them to possession over the defendant, to show a
record or prescriptive title.

A deed by a mortgagee out of possession without a transfer of the debt con-
veys no legal title.

A deed by a mortgagee's assignee under invalid foreclosure proceedings con-
veys no legal title.

Under Revised Statutes, 1841, chapter 125, section 5, requiring notice of
mortgage foreclosure to be published in a paper printed in the county
where the premises are situated, foreclosure on a notice not shown to have
been given in a newspaper printed as well as published in the county is
invalid.

An administratrix appointed by a probate court in another state has no
authority to assign a mortgage on land in Maine.

An unsigned certificate of foreclosure invalidates the title of a grantee of
the foreclosing mortgagee not in possession.

*Johnson v. Leonards*, 68 Maine, 237, overruled so far as inconsistent with the
case at bar.

On report.   Judgment for defendant.

Real action to recover the possession of certain lots of land in Eustis, Franklin County.   Plea, the general issue.   At the conclusion of the evidence, the case was reported to the Law Court for determination.

The case is stated in the opinion.

*E. E. Richards, and H. S. Wing,* for plaintiffs.

*Frank W. Butler,* for defendant.

SITTING:   EMERY, C. J., WHITEHOUSE, SAVAGE, SPEAR, CORNISH, KING, JJ.

SPEAR, J.   This case comes up on report.   It is a writ of entry for the possession of certain lots of land in the town of Eustis, Franklin County, containing 200 acres more or less, and known as the Robinson Pasture.   The defendant pleads the general issue, — did not disseize.   This puts in issue the plaintiffs' title.   Under this plea defendant may rebut the plaintiffs' proof; set up title in himself; *Rowell* v. *Mitchell,* 68 Maine, 21 ; or merely show that the plaintiffs have no title except title conveyed by plaintiff under which the defendant does not claim.   *Stetson* v. *Grant,* 102 Maine, 222, and cases cited;   *Brown* v. *Webber,* 103 Maine, 60.   The burden is on the plaintiffs to show the title they have alleged, *Stetson* v. *Grant* ;   *Brown* v. *Webber,* supra, and must recover, if at all, upon the strength of their own title, *Day* v. *Philbrook,* 89 Maine, 462, *Coffin* v. *Freeman,* 82 Maine, 577, and cases cited. If the plaintiffs show no title, they cannot prevail even though the defendant has none, *Derby* v. *Jones,* 27 Maine, 357.   Possession under color of title is better than no title.   *Stetson* v. *Grant,* supra. Under these familiar rules of law the evidence in this case is to be considered.

The plaintiffs in support of their title offered a warranty deed from Abner and Philander Coburn to Miles Standish of Flaggstaff and quitclaim deeds from the heirs of Miles Standish of the premises in question.   This made a prima facie case for the plaintiffs for 65-108th interest in the premises described in the deed and in the writ.   *Stetson* v. *Grant,* supra, and cases cited.

In defeasance of the plaintiffs' title, the defendant says there are no equities in favor of the plaintiffs, inasmuch as the defendant for a valid debt eighteen years previous to the date of this writ had purchased and since been in possession of the locus in question under a sheriff's deed, and supposed he had a good title, until it was discovered by the plaintiffs that there was a defect in the notice of the sale which resulted in a technical defeat of his title, and that since such discovery the plaintiffs had bought in the title from the various heirs of Miles Standish, who held prima facie title from the Coburns. The defect in the defendant's title was due to the failure of the officer in advertising the sale upon levy to post notices in the organized plantations adjoining the town of Eustis, as required by statute.

The defendant by sheriff's deed being in possession under color of title, *Butler* v. *Taylor*, 86 Maine, 17, it is incumbent upon the plaintiffs to entitle them to possession over the defendant to show a record or prescriptive title. The latter they do not claim. The former seems to be beset with the same technical defects that are invoked by the plaintiffs to defeat the execution title of the defendant. The defendant starts out with the advantage that possession under color of title is better than no title. *Stetson* v. *Grant*, supra. The plaintiffs' claim under warranty deed from the Coburns to Miles Standish makes a prima facie case, as already seen. The defendant "may, however, always show that the plaintiff obtained nothing by his deed." *Stetson* v. *Grant*, supra. This the defendant undertakes by endeavoring to show that the Coburns received no title from their grantors and had no title to convey to Standish, and that through the various mesne conveyances the plaintiffs "obtained nothing by their deed," as he says the following records will disclose.

By mesne conveyances from the State of Massachusetts a part of the locus in quo came into the possession of Nathaniel S. Ames of Boston, as assignee of a mortgage. Through Ames the title purports to vest in James B. Robb of Boston as follows: Ames began foreclosure proceedings July 29, 1840, by publication, and before the equity of redemption had expired, died. Maria C. Ames was

appointed administratrix of his estate, in Boston, February 6, 1843. December 12, 1844, after the equity had expired, she as administratrix, assigned the mortgage to James B. Robb.   Robb by quitclaim deed in 1844 conveyed his interest in 65-108ths of the locus to various parties, which interest by various quitclaim deeds was acquired by Abner and Philander Coburn.   The validity of the Coburns' title, therefore, depended upon the validity of Robb's title.   The defendant now contends (1) that the foreclosure attempted by Ames was void and (2) if not void, the equity of redemption had expired and the realty vested in the heirs before the date of the assignment, and (3) that the assignment was ineffectual to convey title even to the mortgage as a chattel;  in either event that no title to the land passed to Robb.   The foreclosure was clearly defective. It purported to be by publication and the certificate failed to comply with the statute in not stating that the paper was printed in Farmington as well as published there.   The statute of 1840, chapter 105, section 5, required that the publication notice should be in the newspaper printed in the county where the premises are situated.   Our court have repeatedly decided that foreclosure upon such a notice is invalid.   *Bragdon* v. *Hatch*, 77 Maine, 433 ; *Savings Bank* v. *Lancey*, 93 Maine, 429, and cases cited.   The assignment of the mortgage to Robb was made by Maria C. Ames, administratrix of the estate of Nathaniel F. Ames, late of Boston. But Maria C. Ames, appointed administratrix by the probate court in Massachusetts, had no authority to assign a mortgage on real property in the State of Maine.   *Brown* v. *Smith*, 101 Maine, 545 ;  *Cutter* v. *Davenport*, 1 Pickering, 81.  But the plaintiffs say that the defendant has not shown that ancillary administration was not taken out in Maine.   We do not think it was necessary. When he had established the fact sufficient to break the plaintiffs' chain of title, it was then incumbent upon the plaintiffs to rebut it. The defendant, having shown a break in the record title of the plaintiffs, cannot be called upon to repair it.   The burden is then imposed upon them to affirmatively overcome the defect.

It would therefore appear that James B. Robb had acquired no legal title to that part of the property in question which he under-

took to convey by his quitclaim deed of 1844 and that therefore no legal title through Robb by mesne conveyances vested in the Coburns. We have no occasion here to consider the equities involved.

Another portion of the locus is claimed by the plaintiff through a title originating in a conveyance purporting to be made from Silvanus Mitchell, and Zenas Keith to Robert Ayer. The source of the grantors' title does not appear; but inasmuch as they took a mortgage from Ayer, and the Coburns' title depend upon the legality of the foreclosure, the source of the original title becomes immaterial. This mortgage was subsequently assigned to Alexander H. Twombley of Boston, who attempted to foreclose it by publication. The foreclosure certificate was invalid for the reasons stated in the Ames foreclosure, supra. There was, however, connected with this attempted foreclosure, another defect which may have been fatal. The certificate of foreclosure contained no signature. Therefore the grantees of Twombley, a mere assignee not in possession, acquired no legal title by their deeds and the Coburns had no legal title to convey to Standish.

The plaintiffs, however, claim that the quitclaim deed by Twombley, although he was only an assignee of the mortgage was effectual to convey title under the doctrine of *Johnson* v. *Leonards*, 68 Maine, 237. But under the facts in this case, there being no evidence that the mortgagee or the assignee had made entry or had transferred the mortgage debt, the rule laid down in *Lunt* v. *Lunt*, 71 Maine, 377, seems to apply.

In *Johnson* v. *Leonards*, the mortgagee in 1862 before entry to foreclose and without possession gave a quitclaim deed to the defendant's predecessor of all his "right and interest" in the mortgaged premises, but did not transfer the mortgage debt. In December, 1863, he assigned the mortgage of the identical premises, embraced in the quitclaim deed, to the plaintiff and delivered to her the note secured thereby. The opinion holds upon this state of facts as follows: "The mortgagee, therefore, having conveyed all his interest in the mortgage premises to Stocking by his quitclaim deed of July 8, A. D. 1862, had no remaining estate therein to pass to the

plaintiff by his assignment of December 29, A. D. 1863." In other words the mortgagee assigned the mortgage, and debt secured thereby to the plaintiff, after having quitclaimed to the defendant, and the latter deed is held, not to operate as an assignment, but to convey the legal title.

In *Lunt* v. *Lunt*, 71 Maine, 377, the assignees of the mortgage by quitclaim deed conveyed to the defendant 2-9ths of the mort-gaged premises. This deed so far as we are able to see, conveyed precisely the interest that the deed in the above case purported to convey, and it appears from the opinion that the same question was raised. The court say : "But it is claimed that by the quitclaim deed of Sally Lunt and Timothy G. Lunt to the tenant, of January 25, 1868, an interest in real estate of two-ninths of the Noble lot passed to her. But such is not the law. The interest of a mortgagee before entry, is not real estate but a personal chattel. The interest in land is inseparable from the debt. It is an incident to the debt and cannot be detached from it. *Ellison* v. *Davids*, 11 N. H. 275. The mortgages were not foreclosed. No assignment was made of the mortgage debt or of any portion of the same. The Carter mortgage has been paid in full by the plaintiff. The assignee of the Whiting mortgage was never in possession under his mortgage. The quitclaim deed, did not, under these circumstances convey any title to the real estate, or to a specific portion of the Noble lot." This case is quoted and affirmed in *Hussey* v. *Fisher*, 94 Maine, 301. In neither of these cases is *Johnson* v. *Leonards* in any way referred to. It is conceded that a deed of a mortgagee in possession, *Connor* v. *Whitmore*, 52 Maine, 185, or accompanied by the delivery of the mortgage notes, *Dixfield* v. *Newton*, 41 Maine, 221, passes the mortgagee's title to real estate. But *Johnson* v. *Leonards*, goes further and seems to adopt, as a general principle of law, the rule laid down in *Hunt* v. *Hunt*, 14 Pickering, 374, for the decision of that particular case, and states the rule as follows : "And, in general, when it is the intention of the parties that the quitclaim deed shall be effectual to carry the mortgagee's interest in the estate, it operates as an

assignment of the mortgage without a transfer of the debt and without the possession of the mortgagee at the date of the deed."

But in *Hunt* v. *Hunt*, the case is stated in the syllabus as follows : "The owner of land mortgaged it to V, in 1803, but continued in possession. In January, 1810, he made a deed of the same land to A, and in March, 1810, he made a deed of it to T. The mortgagee, in 1812, conveyed the land to T. by a deed of quit-claim, in the usual form, with a covenant of warranty against himself and any person claiming under him. It was held, that this conveyance to T, who had taken from the mortgagor the second deed of the equity of redemption, did not operate as an extinguishment or merger of the mortgage, so as to give a priority to A, but that it operated as an assignment of the mortgage." As the opinion says : "The great question, therefore, is whether the quitclaim deed from Verry to Thayer with covenants against himself, his heirs, etc., was an extinguishment and discharge of the mortgage, or an assignment and conveyance of the title created by it, . . . . . and we can see no reason why a purchaser of an equity of redemption . . . is in any respect disabled from becoming such assignee." And the force of the opinion is not with reference to what the quitclaim conveyed, but upon the assumption that it operated as an assignment of the mortgage and, upon this assumption, whether the assignment, when united with the equity of redemption in the same person, operated as an extinguishment of the mortgage or as an assignment of it. No such question arose, or could arise in *Johnson* v. *Leonards*. The mortgage, itself, and the secured note, were actually assigned to the plaintiff. The question of assignment was settled by the evidence of the original document. The assigned mortgage and note were admittedly outstanding. Hence *Hunt* v. *Hunt* discussing the question of extinguishment is no precedent for *Johnson* v. *Leonards*.

We think it will appear as we proceed that this case is also in direct conflict with the legal maxim, in case of mortgages, that the security follows the debt. We are therefore convinced that the true rule of law based upon both reason and authority is declared in *Lunt* v. *Lunt* and *Hussey* v. *Fisher*. *Lunt* v. *Lunt* strikes the

key to the situation in the declaration : "The interest of a mortga-
gee before entry is not real estate but a personal chattel," and that
"the interest in the land is inseparable from the debt and cannot be
detached from it." Along this same line we find it said in *Wilkins*
v. *French*, 20 Maine, 111 : "A mortgagor in possession is consid-
ered as the owner against all but the mortgagee ; and may well sell
and convey the fee ; the mortgage being considered as only the
security for the debt. He has the same rights that he ever had
except as against the mortgagee. To the same effect are the early
Massachusetts cases.

*Ellison* v. *Daniels*, 11 N. H. 274, cited in *Lunt* v. *Lunt*, is
also an exhaustive opinion and a leading case upon the relation of
mortgagor and mortgagee and their grantees, and fully sustains the
doctrine enunciated in the cases referred to. In this case the facts
show that the plaintiff in 1814 was seized of the demanded premises
in fee and conveyed them in mortgage to Joseph Ellison to secure
the payment of his promissory note. Joseph Ellison, the mortgagee,
in 1820 executed a warranty deed of the premises to Abraham
Ellison and Abraham Ellison on March 6, 1826, executed a similar
deed of the premises to the defendant. The evidence does not show
that the mortgagee or his assignee was in possession at the time the
deeds were given, nor a transfer of the note by Joseph Ellison.
This action was brought by the plaintiff, the original mortgagor,
to recover possession of a tract of land conveyed by him in mortgage
to Joseph Ellison while the mortgage still continued outstanding
and in full force. The questions raised as stated by the court are :
(1) Can the demandant, who is the mortgagor of the premises
sought to be recovered, maintain the action where the mortgage
remains in force against even a stranger to the title in possession ?
(2) Is the tenant a stranger to the mortgage title, or is he assignee
thereof? This raises the precise question in issue in the case at bar.

In deciding these questions in favor of the plaintiff the court in
defining the office of a mortgage adopted the language of Lord
Mansfield in *King* v. *St. Michaelis*, Doug. 630 : "A mortgagee,
notwithstanding the form, has but a chattel, and the mortgage is
only a security" and "that it is an affront to common sense to say

the mortgagor is not the real owner." Upon these general princi-
ples of law touching the effect of a mortgage, the court proceed to
discuss the nature, character, and extent of the interest of Ellison,
the mortgagee, in virtue of his mortgage, as follows : "At law, by
the mortgage, a conditional estate in fee simple vests in the mort-
gagee. And a real action may be maintained by the mortgagee, to
recover possession of the mortgaged premises. And in *Southerin* v.
*Mendum*, 5 N. H. 420, it is said, that a *mortgage*, in fee passes to
the mortgagee, as between him and the mortgagor, all the estate in
the land ; and he may maintain trespass, or writ of entry, against
any one who may disturb his possession, even against the mortgagor
himself. And so far as it may be necessary, to enable the mortga-
gee to prevent waste, and to keep the land from being in any way
diminished in value, or to receive the rents and profits, and in short
to give him the full benefit of the security, and appropriate remedies
for any violation of his rights, he is undoubtedly to be treated as
the owner of the land." *Southerin* v. *Mendum* and auth. there
cited. *Class* v. *Ellison*, 9 N. H. 69. In all other respects, and
for all other purposes, the interest of the mortgagee is treated as a
mere personal chattel." And Kent, Chief Justice, in *Jackson* v.
*Willard*, 4 Johns. 42, (N. Y.) is quoted to the effect that "until
foreclosure, or at least until possession, the mortgage remains in the
light of a chose in action. It is but an incident attached to the
debt, and in reason and propriety it cannot and ought not to be
detached from its principal. The mortgage interest, as distinct
from the debt, is not a fit subject of assignment. It has no deter-
minate value. . . . It would be absurd in principle, and
oppressive in practice, for the debt and the mortgage to be separ-
ated and placed in separate and independent hands." Having
referred to these cases, the interest of the mortgagee is then thus
defined : "The right of the mortgagee to have his interest treated
as real estate, extends to, and ceases at the point, where it ceases to
be necessary to enable him to protect and to avail himself of his just
rights, intended to be secured to him by the mortgage. To enable
the mortgagee to sell and convey his estate, is not one of the pur-
poses for which his interest is to be treated as real estate. . .

The object of the mortgage is the security of the debt; and it is obvious reason, that he only who controls the debt should control the mortgage interest."

*Aymer* v. *Bill et als.*, 5 Johns. Ch. N. Y. 570, is then referred to with approval, and is a case in which it appears "that the debt was transferred by Crane after the execution of the deed of Bill and Crane to Aymer; yet it was determined in that case that the interest of Crane, the mortgagee, did not pass by his deed to Aymer, but passed to his subsequent assignee of the debt. It was said, in that case, that such a mortgage interest cannot be conveyed as a still subsisting interest, by way of mortgage, ' because that would separate the debt and the pledge; the latter to reside in one person, while the other resided in another.'" This case proceeds upon the theory and distinctly states that the mortgage did not appear to "have been foreclosed or possession taken by Crane under it." The facts in this case are substantially identical with those in *Johnson* v. *Leonards.* From these cases it would appear that "for the purpose of sale, absolute or conditional, the mortgagee is not to be considered as the owner of the land mortgaged, without either foreclosure of the mortgage or entry under it."

Now there are certain circumstances, as already revealed, under which the mortgagee can convey the estate described in the mortgage. If the note secured by a mortgage accompanies the delivery of the deed, there can be no doubt that it transfers the title of the mortgagee in the premises mortgaged. But if the note is not transferred, or is transferred to a person other than the grantee in the deed, the deed conveys no legal title, as against the owner of the debt.

And this raises the question whether a deed which does not mention a transfer of the note is presumptive evidence of such transfer. In *Bell* v. *Morse*, 6 N. H. 205, this question is considered as follows: "And we are of opinion, that it is not enough to show a deed from a mortgagee, in order to prove that the land passed, but it must be made to appear that the debt passed to the grantee:—at least it must appear that the mortgagee had a right to transfer the debt to the grantee. As no account is given

of the debt secured by the mortgage in this case, we think that the tenant is not entitled to hold the land against the demandant." It is therefore evident that a mere deed without any evidence relating to the control of the debt may convey no interest in the land.

From an analysis of these cases it follows that *Johnson* v. *Leonards* is not only in conflict with *Lunt* v. *Lunt* but all the cases cited, and denies the application of the principle that determines the very essence of a mortgage, namely, that the security follows the debt, as the opinion holds in specific terms that the deed operated as an extinguishment of the mortgage "without a transfer of the debt and without possession of the mortgagee." The oversight in this case was the failure to take note of the fact that while the debt secured by the mortgage was outstanding or in the hands of a third party, no legal title to the security could be conveyed by the mortgagee, against such party or in defeasance of the debt.

This rule is fully confirmed by *Jordon* v. *Cheney*, 74 Maine, 359, which in its reasoning seems to be conclusive of the correctness of *Lunt* v. *Lunt* and equally conclusive of the error of *Johnson* v. *Leonards*. The syllabus fairly states the case as follows : "One who takes a mortgagee's title holds it in trust for the owner of the debt to secure which the mortgage was given.

If a mortgage is given to secure negotiable promissory notes and the notes are transferred, the mortgagee and all claiming under him will hold the mortgaged property in trust for the holder of the notes.

In such case it is not necessary that there should be any recorded transfer of the notes or mortgage. Nor is an assignment of mortgage necessary. Nor is a written declaration of trust necessary.

A merger takes place only when the whole title equitable as well as legal unites in the same person."

As the equitable interest follows the debt, only in the owner of the debt can the two titles merge and become a perfected title. See also *Stewart* v. *Welsh*, 84 Maine, 308, and cases cited. A careful examination of the law we think will show that when the title of the mortgagor and the mortgagee have united, that such title, whatever the form of conveyance, is construed to operate as an

extinguishment or assignment of the mortgage as the interest of the party holding the mortgagee's interest may appear. But never has it been held, so far as we are able to discover, except in *Johnson* v. *Leonards*, that a union of these titles should be regarded as an extinguishment of the mortgage when the mortgage itself and the debt secured thereby were actually assigned to another person unpaid and outstanding. On the contrary it is well established that a mortgagee cannot by any act of his own divert the security from the protection of the mortgage debt.

The very ground upon which *Hunt* v. *Hunt* proceeds, is that a conveyance by a quitclaim deed of the mortgagee should be regarded as an assignment for the express purpose of enabling such assignment to follow the debt. On page 383 it is said: "We have already stated that the mortgagee had a perfect right and legal power to assign his mortgage, if he thought fit, and to give to his assignee the same right which he held himself, that is, to receive the amount secured by the mortgage, from any person entitled by contract or by operation of law, to redeem, and to hold the legal estate in security of the debt, till it should be so paid." The last clause states the climax of this whole opinion, namely: "To hold the legal estate in security of the debt." Chief Justice Shaw simply pursued a different course in arriving at the same result declared in *Jordon* v. *Cheney*, supra.

So far as the present opinion is inconsistent with *Johnson* v. *Leonards* the latter must be regarded as overruled.

If we now apply the doctrine of these well settled rules of law to the alleged transfer of title by Twombley, it is then discovered that the evidence necessary to prove such transfer is entirely wanting. Twombley, notwithstanding his attempted foreclosure, held only the title of the mortgagee. There is no evidence that he was in possession or that he transferred, or even had control of the debt; and the deed by which he undertook to convey, shows that it was his intention to convey the premises themselves, and not an assignment of the mortgage. This intention was undoubtedly based upon the fact that Twombley supposed, and had a reasonable right to suppose, that he was the owner in fee inasmuch as the last

publication of the foreclosure proceedings was in February, 1842, and the quitclaim deed by which Twombley undertook to convey was dated in June, 1848, more than five years after the expiration of the equity of redemption if the foreclosure had been legal. It is therefore evident that Twombley conveyed no legal title by his quitclaim deed, there being no evidence to show that he had foreclosed, was in possession, had transferred or was in control of the debt, or intended to convey a mortgagee's interest.

The title to another portion of the locus begins in a deed from Daniel Adams et als., dated in 1833, to Oliver Pierce et als., and a mortgage back to the grantors, through whom the plaintiffs claim by virtue of the mortgage and foreclosure. An attempt was made by the mortgagees to foreclose this mortgage by publication. The certificate of foreclosure recorded is as follows: "This certifies that the above notice has been published in the Chronicle three weeks successively as follows:" This certificate is fatally defective for the reasons already stated. This notice was dated March 12, 1847. On April 1, 1848, the mortgagees by attorney assigned the mortgage, with the benefit of the foreclosure proceedings, and the note thereby secured, to the Coburns.

The plaintiffs contend that, even if the foreclosure proceedings were invalid, the assignment in this case was sufficient to convey the fee in the premises to the Coburns as assignees of the mortgage. This mortgage was originally given to Joseph Clark and Daniel Adams, both of Medford, Massachusetts, and Charles L. Eustice of Dixfield, Maine. The notice of foreclosure, signed by Daniel Adams and Joseph Hartshorn, avers that Hartshorn obtained his interest in the mortgage through an assignment by Clark, dated in 1839, and also "as legally entitled to said Clark's interest in said mortgages, if said assignment had not been made as aforesaid, as the sole executor and residuary legatee in the will of said Clark, who has since deceased." It also appears that Eustice, one of the mortgagees, was not a party named in the Power of Attorney and therefore did not authorize the attorney to convey, nor did he sign the assignment; the Eustice interest was, consequently, not conveyed. No evidence is presented of any assignment of Clark to Hartshorn.

There is no record of such assignment in this State.  Nor was any administration taken out on Clark's estate in the State of Maine. Joseph Hartshorn, appointed executor in Massachusetts, as already appears in *Brown* v. *Smith*, supra, acquired no authority to foreclose or assign a mortgage upon lands in the State of Maine.  His assignment, therefore, conveyed no interest in the premises described in the mortgage.

But the Adams' interest was legally assigned to the Coburns, who, having the benefit of the foreclosure proceedings already instituted, undoubtedly regarded the legal title as fully vested in themselves inasmuch as the foreclosure was begun in 1847, and their deed upon which the plaintiffs rely was dated in 1872, 15 years later.

For the reasons already given the Coburns' deed conveyed no legal title.

Our conclusion is, whatever the equitable status of the title, the plaintiffs and their predecessors received no legal record title through the conveyances of Robb or Twombley to the Coburns, or from the Coburns of the estate purporting to be assigned to them by Adams, Hartshorn and Eustice.  Upon this view a consideration of the subsequent titles becomes immaterial.

*Judgment for the defendant.*