LIZZIE DOLLOFF
*vs.*
LAURA E. GARDINER

Waldo County. Opinion, September 6, 1952.

*Dubord & Dubord,* for plaintiff.

*McLean, Southard & Hunt,*
*Clyde R. Chapman,* for defendant.

SITTING: MURCHIE, C. J., THAXTER, FELLOWS, MERRILL, NULTY, WILLIAMSON, JJ.

NULTY, J.   On exceptions to decision of a single justice who found for the defendant in a jury waived case heard at the April 1951 Term of the Waldo County Superior Court.

By writ of entry the plaintiff seeks to recover certain property in the town of Knox in said Waldo County claimed

by the defendant under conveyance from the inhabitants of the town of Knox. From the record it appears that the plaintiff acquired her title as the sole heir of her mother who died June 16, 1950, intestate, seized and possessed of the property in question unless it has been lost to the town of Knox by proceedings under the Tax Lien Law, so-called, R. S., 1944, Chap. 81, Secs. 97 and 98, as amended. Defendant's claim of title to the property is based upon a quitclaim deed from the inhabitants of the town of Knox dated July 26, 1950, and it appears from the record and bill of exceptions that the town of Knox instituted and carried to a conclusion the proceedings under the provisions of the above mentioned statutes to enforce liens for taxes assessed by said town for the years 1938, 1939, 1941, 1943, 1944, 1945, 1946, 1947 and 1948, the result of which the defendant claims vested title in said town which title said town conveyed to the defendant as above stated.

The exceptions only raise two questions, although in passing it may be stated that while the plaintiff makes many general claims and assertions which might have been the subject of exceptions, the instant bill of exceptions, other than the two exceptions to which we will hereinafter refer, is not in such form as is required by the rules governing the sufficiency of bills of exceptions generally and those attacking the decision of a single justice in a jury waived case which have been set forth so many times by us that it seems unnecessary to again set them forth at length. A great many of the cases governing the sufficiency of the rules relating to bills of exceptions can be found cited in the recent case of *Public Loan Corporation* v. *Bodwell-Leighton Company,* 148 Me. 93, 89 A. (2nd) 739.

We said in *Tozier, Coll.* v. *Woodworth and Land,* 136 Me. 364, 365, 10 A. (2nd) 454:

> "The proper way to review errors of law in a case heard and determined by the court without the aid of jury is, if at all, by exceptions."

In the instant case we hold that the bill of exceptions, other than the two exceptions hereinafter considered, does not properly present any other alleged erroneous rulings of law in the manner prescribed by statute. R. S., 1944, Chap. 94, Sec. 14.

The basic issue in the instant case is the title of the plaintiff to the property described in the writ of entry. According to our decisions defendant will defeat plaintiff's action if title is shown either in defendant or another. We said in *Bowman* v. *Geyer,* 127 Me. 351, 355, 143 A. 272:

> "The defendant in a real action may show title in another person, *Rowell* v. *Mitchell,* 68 Me. 21. The plaintiff having failed to show title in himself, and the defendant having shown title in another, under whom he had possession, warranted judgment for defendant."

In other words, defendant urges plaintiff must recover upon the strength of her own title and not upon the weakness of defendant's title. See *Wyman* v. *Porter,* 108 Me. 110, 111, 79 A. 371, and cases cited therein.

This brings us to the consideration of the first exception. This exception concerns the admission in evidence by the court of the deed from the inhabitants of the town of Knox to defendant. Plaintiff objected to its introduction stating that it was not admissible until there was proof of authority of the signers of the deed to issue it on behalf of the town. However, a stipulation in the record indicates that the town of Knox at its 1950 annual meeting passed the following vote with reference to the transfer of property acquired through tax proceedings, said vote reading as follows:

> "Upon motion, voted to authorize the selectmen, on behalf of the town, to sell and dispose of any real estate acquired by the Town for nonpayment of taxes thereon on such terms as they deem advisable and to execute quit-claim deeds for such property."

It is our opinion that the quit-claim deed from the Inhabitants of the town of Knox to the defendant, in view of the stipulation, was properly admitted and that plaintiff's objection to its admittance was properly overruled and that the plaintiff suffered no damage thereby.

The second exception of the plaintiff reads as follows:

> "The defendant also offered in evidence her exhibits 3, 4, 5, 6, 7, 8, 9 and 10, being tax lien certificates recorded by the town of Knox for taxes for the years 1947, 1946, 1945, 1944, 1943, 1938, 1939 and 1941. Plaintiff objected seasonably to the admission of each of these exhibits. Plaintiff's objections were overruled and the exhibits admitted. Plaintiff's exceptions were seasonably noted. Plaintiff's grounds for objection to the admission of these exhibits was that all tax lien certificates prior to the year 1948 were inadmissible, because in filing and recording liens in successive years the town waived its rights under said certificates."

It may be noted that the plaintiff, by her exceptions, does not attack the validity of the several tax lien proceedings herein mentioned prior to 1948 in any particular other than setting up the claim that in filing and recording said tax liens in successive years the town waived its rights under said lien certificates and it also is noted that the lien certificate for the year 1948 was duly admitted without objection. We, therefore, hold under the authority of *Town of Warren* v. *Norwood,* 138 Me. 180, 186, 24 A. (2nd) 229, and cases cited therein:

> "that in the absence of evidence to show the contrary, it will be presumed that a town has proceeded in the usual and legal manner, * * * *."

The record shows factually that the conduct of the town of Knox in many respects was inconsistent with a waiver. For instance, it sold the hay on the premises in question in

the year 1948 to the husband of the plaintiff who paid the town for it and, in addition, either during the year 1948 or 1949 it shingled the house situated on the premises with the knowledge of the plaintiff and the plaintiff admits that the town would not agree to release the property to the plaintiff on plaintiff's offer to repair the buildings.

An examination of the statutes governing the filing of tax liens in statutory tax proceedings discloses that the filing of each tax lien certificate in the Registry of Deeds creates a mortgage in favor of the town. The statute then goes on to state, among other things, that if the mortgage, together with interest and costs, shall not be paid within eighteen months after the date of the filing of said certificate, the said mortgage shall be deemed to have been foreclosed and the right of redemption to have expired. We said in *Inhabitants of Canton* v. *Livermore Falls Trust Company,* 136 Me. 103, 106, 3 A. (2nd) 429, speaking of the expiration of the eighteen months period:

> "* * * any right to redeem could not have then been asserted; the time had gone. On the theory of the statute, the town was now owner, absolutely."

Assuming, as we must from the record, that some, if not all, of the tax liens were good in the absence of evidence to the contrary, it appears to us that we reach the same conclusion as was reached by our court in *Inhabitants of Orono* v. *Veazie,* 57 Me. 517, 519, when we recognized that there might be under the then existing law numerous tax sales and numerous tax deeds. In that opinion we said:

> "There may be numerous sales and tax deeds. One deed may be valid and the others convey no title."

It should also be noted that each tax lien certificate, when recorded, constitutes a new mortgage based on a new tax

assessment and inasmuch as the statutory language found in the act which extends the time beyond one year before title would vest if the mortgage was not paid, it must be assumed that the Legislature, when it enacted the legislation, had in contemplation that the foreclosure of the lien or mortgage could not vest title before the time of assessment of taxes for the following year. We come to this conclusion in part because it is substantially the same under the old tax sale procedure which has been on the statute books for many years and we are further strengthened in our belief because if upon filing of the tax lien certificate a mortgage is created, we see no reason why successive mortgages could not be created in a like manner. It should also be borne in mind that until the mortgage matured and the right of redemption was lost, in any event, it is the duty of the assessors to assess the property. The reason for this statement is because we held in *Inhabitants of the Town of Milo* v. *Milo Water Co.*, 131 Me. 372, 377, 163 A. 163:

> "Assessors are not subject to the direction and control of a municipality; their duties and authority are imposed by law."

The plaintiff claims that the town waived its rights under the tax lien certificates by filing and recording tax liens in successive years. This flatly raises the question as to whether or not the town is in such a position that the rules of law governing waiver are applicable to it. The claim arises out of matters not in the control of the town; it concerns the collection of public taxes. We said in *Thorndike* v. *Inhabitants of Camden*, 82 Me. 39, 44, 19 A. 95, in speaking of the powers and duties of towns with respect to taxes:

> "The claim in suit, however, arises out of matters which are not entrusted to the control of town meetings. It concerns the collection of public taxes. The statute (R. S., c. 3, § 46)" (now R. S. 1944, Chap. 80, § 90, as amended by Chap. 158,

P. L. 1949) "empowers a town to raise money for specified purposes,—that is, to fix and order by vote the amount to be assessed and collected for proper town charges,—but there the discretionary power of the town seems to end. The statute gives it no control over the *assessment or collection of any taxes.*" (Emphasis ours.) "It is true, the statute requires the town to appoint the assessors and collectors of all state, county and town taxes to be levied within its territory, but the town does this as the political agent of the state. The appointment could have been entrusted to any other agency. These officers are not corporate agents. They are public officers, owing to the public and not to the town alone, the duties imposed by statute. Only their appointment comes from the town. Their authority is from the statute, and they cannot be controlled by the town in the execution of that authority. *Desty on Taxation*, 508 685. *State* v. *Walton*, 62 Maine, 106.

"No vote of the town can relieve the assessors of any part of their statute duty; nor can such vote control their action in any detail.

\* \* \* \* \* \* \* \* \* \*

"\* \* \* \* \* \* All these officers proceed, not under any vote of the town but independent of it and under statute authority. It would be their duty to act, when the occasion arises, even in spite of a vote of the town.

\* \* \* \* \* \* \* \* \* \*

"\* \* \* \* \* \* A town meeting has no authority to review, modify or reverse the judgment of the assessors as to the persons or property to be taxed. Nor has it any authority to excuse a man from paying his tax, or to refund to him a legal tax once paid. To concede that a town can directly or indirectly abate a tax by vote in town meeting, is to concede the power of a town to determine who shall pay taxes, and who shall be exempt, and the consequent power to place the public burdens wholly on such citizens, as the majority shall single

out for that purpose. This court has emphatically held that a town has no such power, and that the legislature can not confer it. *Brewer Brick Co.* v. *Brewer,* 62 Maine, 62. If the town can not abate the tax it certainly can not excuse the collector from collecting it. The town can not do indirectly what it has no direct power to do."

The plaintiff, as we have pointed out, sets up waiver in her exception, but in her brief she not only argues waiver but estoppel as well. The text book authorities regard waiver and estoppel as closely akin. In fact, we find in 56 Am. Jur., Sec. 3, Page 103, the following statement:

"In fact, the terms 'estoppel' and 'waiver' are often loosely used interchangeably, but although a waiver may be in the nature of an equitable estoppel and maintained on similar principles, they are not convertible terms. A waiver may amount to an estoppel, but not necessarily so, * * *."

In recent years we have considered the law of waiver and carefully defined it and also the difference between it and estoppel. See *Johnson* v. *The Columbian National Life Insurance Company,* 130 Me. 143, 145, 154 A. 79. See also *Colbath* v. *H. M. Stebbins Lumber Company,* 127 Me. 406, 413, 144 A. 1, and *Libby* v. *Haley,* 91 Me. 331, 333, 39 A. 1004. There is no doubt but that a town in its private or proprietary capacity may be subject to the operation of law respecting waiver and estoppel, but taxation is a governmental rather than a private or proprietary function and the town in taxation matters acts only as a political agent of the state in the assessment and collection of taxes.

We said in *The Inhabitants of the Town of Frankfort* v. *Waldo Lumber Co.,* 128 Me. 1, 3, 5, 145 A. 241:

"The levying of taxes is a power of sovereignty.

"Municipal officers annually levy or assess taxes on persons and property within their bounds, for the state, their county and their municipality.

"When assessing and collecting such taxes municipal officers are the agents of the State, which is sovereign.

"And in so doing they proceed only under such agency, and they shall proceed strictly as authorized and empowered.

" 'A municipal corporation has no element of sovereignty. It is a mere local agency of the State, having no other powers than such as are clearly and unmistakably granted by the law-making power.'

"A doubtful corporate power, it has been said does not exist; and when any power is granted, and the mode of its existence is prescribed, that mode must be strictly pursued.

"Now the power of taxation is not only an attribute of sovereignty, but it is essential to the existence of government.

"Nor, strictly speaking, is this power of the Legislature transferable, for, as we shall presently see, whenever taxes are imposed, whether by a municipality or the State, it is, in legal contemplation, the act of the State, acting either by her own officers or other agents designated for the purpose.

" 'Hence, when delegated by the Legislature to a municipal corporation, the latter is considered as *pro hac vice,* the agent of the State, acting for the benefit of the municipality. In other words, the municipality, in the eye of the law, is the hand of the State by which the tax is laid and collected.' *Whiting* v. *West Point,* 88 Va., 905; 29 A. S. R., 750; 15 L. R. A. 860.

\* \* \* \* \* \* \* \* \* \*

"Under our Constitution, Art. IX, Sec. 9, the State may never, in any manner, suspend or surrender the power of taxation.

"The collection of taxes it delegates to the municipalities. The State may exempt classes of

property; it provides that a municipality may abate taxes assessed, but assessors attempting abatement must proceed under rigid rules set out in R. S., Chap. 10, Sec. 77, or other appropriate statute."

We said in *Talbot et al.* v. *Inhabitants of Wesley,* 116 Me. 208, 211, 100 A. 937, speaking of estoppel:

"The defendants are not estopped to deny the validity of the proceedings of the assessors, because, although the assessors were elected by the town, they were public officers, having their duties prescribed by law, for the general welfare; and are guided by law in the exercise of their duties. *Rossire et al* v. *City of Boston,* 86 Mass., 57."

We also said in *Town of Milo* v. *Milo Water Co., supra,* Page 378, which was an action involving the assessment and collection of taxes and wherein one of the defenses was estoppel against the town:

"Limiting our discussion to the question whether a town can be subject to estoppel in a suit for taxes, where the validity of the assessment is not questioned and no constitutional or statutory bar can be raised, there seems to be a general consensus of opinion in the cases that when the State or a municipality makes itself a party to a contract or to a grant in a business or proprietary capacity it is, in matters relating thereto, subject to the same law of estoppel as other contracting persons who may be parties litigant, but many of the cases so holding recognize the double character of municipal corporations, the one governmental or sovereign, legislative or public, and the other proprietary, business or private. Few cases are to be found bearing directly on the question of whether a municipal corporation, a State or the general government can be estopped, as between it and an individual, to assert its governmental or sovereign power, but some cases by way of dicta appear to recognize the principle that in the strict scope of

governmental or public capacity there can be no estoppel. That taxation is a function of government and a basic sovereign right there can be no question. In *Philadelphia Mortgage and Trust Company* v. *City of Omaha,* 63 Neb., 280, 88 N.W., 523, it was held that the doctrine of estoppel in pais could not be invoked against the city in the collection of taxes lawfully assessed. In the case of *Chicago, St. P. M. & O. Ry. Co.* v. *Douglas Co.* (Wis.), 114 N. W., 511, the Court said, 'The analogies to be deduced from the other sovereign powers necessary to the existence of the State, such as the power of eminent domain, the police power, and the power to declare war and make peace (when such last named powers are not by written Constitution vested elsewhere), are all antagonistic to the idea that a State can be subject to an estoppel in the matter of the exercise of its taxing power.— We are constrained to hold that the complaint shows the lands to be subject to taxation, and that there can be no estoppel in pais asserted against the exercise by the State of the taxing power of the State;'

"Bearing in mind that local, county and State taxes are all included in one tax, it is clear that in this State the town is the State for the purpose of collecting such taxes. In full realization of the fact that few cases can be found bearing squarely on the point, we are nevertheless of the opinion that an equitable estoppel does not lie against a town in the exercise of its taxing power, which necessarily included the power of collecting taxes lawfully assessed. To hold otherwise would, we believe, be contrary to sound public policy and destructive of a fundamental sovereign right."

The defense in the instant case is waiver, and estoppel is not specifically raised by the exceptions, but under the facts and circumstances we see no good reason why the same rules of law would not apply to the instant defense of waiver.

Applying the rules of law set forth herein to the instant case and giving effect to the applicable statutes leads to but one conclusion, namely, that on the record and exceptions the town of Knox not only did not waive any rights by the action of the assessors in taxing the property in successive years but it did not acquire any rights to which the law of waiver would apply and inasmuch as the title herein involved is derived from the assessment and collection of taxes by the operation of the statutes, which matters are not in the control of said town, there can be no estoppel for under our decisions it does not lie against the town or even against the State in such matters and until such time as there is legislative authority for the same the collection and assessment of taxes is not within the control of any town except so far as authorized by the Legislature. It, therefore, follows that the decision of the presiding justice below for the defendant was correct. The mandate will be

*Exceptions overruled.*