JABAR, J.,
concurring in part and dissenting in part.
[¶25] I respectfully dissent because I believe that John F. Murphy Homes has raised a disputed issue of material fact with regard to its equitable estoppel defense, and therefore I would vacate and remand for a trial on the merits.[3]
I. STANDARD OF REVIEW .
[¶ 26] Because this case involves a grant of summary judgment, we must conduct a de novo review, considering the evidence and all reasonable inferences drawn therefrom in favor of the nonprevailing party, which, in this case is Murphy Homes. See Lever v. Acadia Hosp. Corp., 2004 ME 35, ¶ 2, 845 A.2d 1178.
[¶ 27] The Court’s opinion here makes various references to the trial court’s decision and draws numerous inferences unfavorable to Murphy Homes. See Court’s Opinion ¶¶ 18, 24 (noting that the trial court found that “it was obvious throughout the years” that Murphy Homes was not being paid Seed and “sat on its hands,” and concluding that “the trial court properly rejected the equitable estoppel claim”) (quotation marks omitted).
[¶28] This language indicates that the Court is applying the deferential standard of review we use when reviewing the findings of a fact-finder for clear error, and not one we utilize when conducting a de *928 novo review. See, e.g., St. Louis v. Wilkinson Law Offices, P.C., 2012 ME 116, ¶¶ 15-16, 55 A.3d 443 (stating that in an appeal of a judgment entered pursuant to M.R. Civ. P. 50(d), this Court applies a clear error standard of review, which requires a plaintiff to “demonstrate that a contrary finding is compelled by the' evidence”); Aldus v. State, 2000 ME 47, ¶¶ 14, 19, 748 A.2d 463; Gravison v. Fisher, 2016 ME 35, ¶ 31, 134 A.3d 857.
[¶ 29] I also believe that the Court improperly relied on Pelletier to impose an inappropriate evidentiary standard of proof, “clear and satisfactory” evidence.[4] See Court’s Opinion ¶24. The Pelletier Court limited the application of the “clear and satisfactory” standard to cases where an equitable estoppel claim is based on the governmental actor’s silence. See Dep’t of Health & Human Servs. v. Pelletier, 2009 ME 11, ¶ 17, 964 A.2d 630. In Department of Human Services v. Bell, the case upon which the Pelletier Court relied, we similarly limited the application of this standard to only those cases where a party relies on the government’s inaction. 1998 ME 123, ¶ 8, 711 A.2d 1292 (“Equitable estoppel based on a [party’s] silence will only be applied when it is shown by clear and satisfactory proof that the [party] was silent when he had a duty to speak.” (quotation marks omitted)).
[¶30] This is not a case in which the plaintiff has relied on government inaction. Rather, this case involves Murphy Homes’s reliance on the State’s continuous and systematic affirmative conduct over the course of multiple years. We should not expand the “clear and convincing” standard of proof for the first time to cases involving the statements and actions of governmental officials, rather than their mere silence.
[¶ 31] In addition to disagreeing with the Court’s standard of review as applied to the facts of the State’s conduct, I also believe that Murphy Homes has presented sufficient facts to raise a dispute of material fact related to its claim of equitable estoppel.
II. EQUITABLE ESTOPPEL
[¶ 32] Murphy Homes is raising the doctrine of equitable estoppel to prevent the State from asserting as an affirmative defense Murphy Homes’s failure to timely seek administrative review of, or take legal action regarding, the State’s failure make Seed payments.[5]
[¶ 33] Equitable estoppel may be applied against governmental agencies. See Me. Sch. Admin. Dist. No. 15 v. Raynolds, 413 A.2d 523, 533 (Me. 1980); see also Pelletier, 2009 ME 11, ¶ 17, 964 A.2d 630; City of Auburn v. Desgrosseilliers, 578 A.2d 712, 714 (Me. 1990). A party may not, however, estop a governmental agency from exercising its fundamental, sovereign powers. See, e.g., Fitzgerald v. City of Bangor, 1999 ME 50, ¶ 13, 726 A.2d 1253. In contrast to situations where a party seeks to prevent the government from exercising these inherent powers, in cases involving a breach of contract, we have established that estop-pel may be utilized. See Town of Milo v. *929 Milo Water Co., 131 Me. 372, 378, 163 A. 163 (1932). In Milo, we said,
there seems to be a general consensus'of opinion in the cases that when the State or a municipality makes itself party to a contract ... it is, in matters relating thereto, subject to the same law of es-toppel as other contracting persons who may be parties litigant ....
Id.; see also Dolloff v. Gardiner, 148 Me. 176, 184, 91 A.2d 320 (1952).
[¶ 34] To mount an equitable estoppel defense to prevent the State from asserting an affirmative defense, Murphy Homes was required to prove “that (1) the statements or conduct of the governmental official or agency induced [it] to act; (2) the reliance was detrimental; and (3) the reliance was reasonable.” Pelletier, 2009 ME 11, ¶ 17, 964 A.2d 630.
A. Statements or Conduct of the Government
[¶ 35] First, the proponent of an equitable estoppel defense must show that the State actor made a misrepresentation, though there is no requirement that the misrepresentation be intentional or deliberate. See Pino v. Maplewood Packing Co., 375 A.2d 534, 539 (Me. 1977). Here, there is no dispute that officials from two State agencies — DHHS and DOE — falsely represented to Murphy Homes officials that the Seed payments to which the school was entitled were included in DOE tuition payments. These statements were routinely corroborated by documentation provided to Murphy Homes by both DHHS and DOE. During the relevant timeframe, Murphy Homes received from DHHS invoices that indicated that Murphy Homes’s claims for medical services were “allowed” but that it was being paid an amount lower than the “allowed” amount, reinforcing the representations of the DHHS official who told Murphy Homes’s CFO that although the Seed was not included in DHHS payments, it was being paid by DOE. Further, DOE routinely approved Murphy Homes for tuition payments that exceeded its operating budget, giving credence to the officials’ assurances that the Seed payments that were excluded from DHHS remittance forms were included in the tuition rates set by DOE. Murphy Homes claims that because it relied upon these assurances from State officials and believed that the Seed payments were included in the tuition payments from DOE, it never sought administrative review of the payments it received from DHHS and did not seek legal redress until 2011. Therefore, based on the record, Murphy Homes has presented sufficient evidence to raise a dispute of material fact regarding the first element of equitable estoppel.
B. Detrimental Reliance
[¶ 36] Next, Murphy Homes was required to show that it relied on the words and actions of the State to its detriment, and did something it would not have otherwise done. See Desgrosseilliers, 578 A.2d at 714.
[¶ 37] Because, viewing the evidence in the light most favorable to it, Murphy Homes was falsely assured that the difference between the amount listed as “allowed” and the amount it was actually paid on the DHHS remittance forms was to be paid by DOE as a part of tuition payments, it never sought from DHHS a review of the reimbursements for the alleged underpayment. Further, Murphy Homes was aware of and had previously invoked payment review procedures, a fact that serves as further proof that the State’s conduct induced Murphy Homes to' do something — forego invoking these procedures — that it would not have otherwise done. In addition to dissuading Murphy Homes from utilizing the payment review *930 process provided in the Manual, the State’s conduct also prevented Murphy Homes from seeking legal redress until 2011, at. which time some of its claims were barred by the statute of limitations. Thus, based on the foregoing, Murphy Homes has also set forth sufficient evidence to raise a dispute of material fact as to the second element of equitable estoppel.
C. Reasonableness of Murphy Homes’s Reliance
[¶38] Lastly, Murphy Homes was required to prove that its reliance on the State’s conduct was reasonable. See Id. Reasonableness is a fact-intensive inquiry, and a court may conclude that Murphy Homes’s reliance was unreasonable as a matter of law only when the evidence does not present any possible inferences of reasonable reliance. Cf. Levesque v. Chan, 569 A.2d 600, 601 (Me. 1990). For instance, in Hanusek v. Southern Maine Medical Center the plaintiffs, a husband and wife, attempted to invoke equitable- estoppel to prevent the hospital from raising a statute of limitations affirmative defense to their malpractice claim stemming from allegedly negligent treatment the husband received at the hospital. 584 A.2d 634, 635-36 (Me. 1990). Specifically, the plaintiffs alleged that they delayed consulting with an attorney and consequently filing suit because a nurse warned that if they sought legal redress, the husband’s name would “be placed on a computer and all the doctors and hospitals in [the] area will know about him and no one will take him as a patient.” Id. at 637 (quotation marks omitted). Relying on these statements, the plaintiffs refrained from taking action for over two years, and by the time they filed suit, the limitations period on their malpractice claim had run. Id. at 636.
[¶ 39] In a 4-3 decision, we held that the plaintiffs’ reliance on the hospital employee’s statement was unreasonable as a matter of law. Id. at 637. In arriving at this conclusion, we noted that the plaintiffs failed to take any action related to their legal claims for almost three years in reliance on a single statement. Id. Further, the plaintiffs “made no attempt to confirm the validity of the nurse’s statement with anyone from the hospital, such as an administrator or a physician.” Id.
[¶ 40] Unlike. the circumstances in Ha-nusek, where the plaintiff relied on a single statement made by a nurse of the defendant hospital, here Murphy Homes relied on what could be considered objectively trustworthy information from DHHS and DOE officials that was corroborated by a pattern of conduct occurring over the course of many years. When Murphy Homes’s CFO recognized a discrepancy in the payments the school was receiving from DHHS, he contacted DHHS directly to inquire about it. After being informed by the DHHS official that DOE, and not DHHS, would be paying the Seed through tuition payments, the CFO contacted the very person responsible for calculating DOE tuition rates. That DOE official corroborated the erroneous information the CFO received from the DHHS official. Apart from the information Murphy Homes received from officials from both DHHS and DOE, it also relied on information contained in documentation amassed over multiple years which confirmed Murphy Homes’s understanding of the payment practices described by the State officials. Additionally, a DOE official testified in a deposition that she falsely certified on State-generated forms that providers such as Murphy Homes were receiving Seed payments for the purpose of obtaining the corresponding federal match funds.
[¶ 41] Furthermore, under this payment scheme, Murphy Homes would submit *931 claims for reimbursement for medical services on a monthly basis, and consequently, each month DHHS would submit to Murphy Homes a remittance form indicating how much of Murphy Homes’s claims it was “allowing.” The monthly DHHS calculations usually involved hundreds or thousands of dollars, whereas the annual DOE tuition calculations involved- amounts in excess of one million dollars. Thus, identifying discrepancies between the amount due as Seed payments from DHHS for medical services billed on a monthly basis, and the amount due as tuition set by DOE for educational costs on a yearly basis was not as “obvious” as the Court suggests. Even assuming, arguendo, that Murphy Homes realized at the earliest possible moment that Seed was not included in tuition, because DOE sets these rates on a yearly basis, Murphy Homes would have been foreclosed from meeting DHHS’ 120-day payment review deadline for a large portion of its claims. Affording Murphy Homes all favorable inferences here, I believe that it has set forth sufficient evidence to raise a disputed issue of material fact as to the third element of its estoppel defense as well.
[¶ 42] Therefore, when viewing the evidence and all reasonable inferences derived therefrom in the light most favorable to Murphy Homes, a rational trier of fact could conclude that its reliance on the words and conduct of the State officials was reasonable.[6] We should thus conclude that Murphy Homes has alleged sufficient facts to raise a disputed issue of material fact as to its equitable estoppel defense. A jury, and not this Court, should determine whether Murphy Homes’s reliance was reasonable.
[¶ 43] For these reasons, I would vacate and remand for a trial on the merits.

. Although I concur with the Court’s conclusion that Murphy Homes’s quantum meruit claims are barred under the doctrine of sovereign immunity, see Court’s opinion ¶ 16, I do not agree with its assertion that “[a]bsent legislative authorization waiving sovereign immunity,- an action to recover money from the State is barred by sovereign immunity.” Id. Since deciding Drake, the case upon which the Court relies in stating this proposition, we have decided a number of cases in which we have established that ”[o]ur jurisprudence suggests that a general statute allowing the State to enter into contracts implies a waiver of sovereign immunity by the Legislature when the State is sued for breach of that contract." Knowlton v. Attorney General, 2009 ME 79, ¶ 13, 976 A.2d 973 (quotations Omitted); see also Profit Recovery Group, USA, Inc. v. Comm’r, Dep’t of Admin. & Fin. Servs., 2005 ME 58, ¶ 28, 871 A.2d 1237.

. We should stop using the phrase "clear and satisfactory” because, as we noted in Little-field v. Adler, "Clear and satisfactory proof means clear and convincing proof.” 676 A.2d 940, 942 (Me. 1996). The use of this phrase here serves only to add confusion to our jurisprudence.

. A plaintiff may invoke the doctrine of equitable estoppel. See Hanusek v. S. Me. Med. Ctr., 584 A.2d 634, 636 n.2 (Me. 1990). There, we established that "[i]f sufficient facts setting out the elements of estoppel can be proven, estoppel should be available to bar a defendant from raising [an affirmative defense] in a civil action." Id.

. Murphy Homes alleges in its complaint that it was led to believe for approximately a decade that Seed payments that were supposed to be made by DHHS were actually included in DOE tuition payments. In concluding that Murphy Homes’s equitable estoppel claim fails, the Court here unnecessarily takes an "all or nothing” approach. The amount of time Murphy Homes "sat on its hands” before seeking legal redress is one factor among many that a fact-finder may consider in analyzing whether Murphy Homes's reliance was reasonable. See, e.g., Hanusek, 584 A.2d at 637. Consequently, a trier of fact could find that Murphy Homes's reliance on the state-mente of State officials regarding these payment practices was reasonable for some period of time, but not for the entire ten years it alleges to have been misled. For instance, a fáct-finder could determine that Murphy Homes’s reliance was reasonable only during the first two years after the statements were made, a finding that would restrict Murphy Homes’s recovery to only those damages it incurred during that timeframe. The Court’s decision forecloses that possibility by holding broadly that Muiphy Homes's reliance on these statements essentially was unreasonable for any specified amount of time.